JUDE G. GRAVOIS, Judge.
 

 |2Pefendant, Scott Brown, was charged with possession of cocaine in violation of LSA-R.S. 40:967 C. Following the denial of his motion to suppress, defendant pled guilty to this charge,
 
 [1]
 
 reserving his right to appeal the denial of his motion to suppress under
 
 State v. Crosby,
 
 338 So.2d 584 (La.1976). For the reasons that follow, we vacate the trial court’s ruling and remand for further proceedings.
 

 FACTS
 

 Given that defendant pled guilty in this case prior to trial, the following facts are taken from the August 7, 2008 preliminary hearing conducted in this case and the October 23, 2008 hearing on defendant’s motion to suppress evidence.
 

 | ^Sergeant Joseph Hasselback,
 
 [2]
 
 a trooper with the Louisiana State Police, testified that on May 7, 2008, he and his partner, Trooper Trent Cuccia, stopped a vehicle for a traffic violation on Interstate 10 in St. Charles Parish. Sergeant Hasselback testified that he observed “a lot of activity inside the vehicle, as far as movements” immediately upon stopping the vehicle. Based on his years of law enforcement experience, he found this behavior to be peculiar.
 

 Pursuant to his department’s standard procedure, Sergeant Hasselback had the driver exit the vehicle, a 2003 Buick automobile. A criminal history check showed that the driver had a recent arrest and conviction for narcotics. Trooper Cuccia received conflicting information from the car’s occupants regarding where they had been and where they were going. He noted that all of the occupants exhibited
 
 *910
 
 nervous behavior. Based on the driver’s criminal background and the occupants’ nervous behavior, Sergeant Hasselback asked the car’s owner, who was a passenger, if she would consent to a vehicle search. The owner duly consented and written consent to search the vehicle was obtained.
 

 Sergeant Hasselback followed his department’s protocol for vehicle searches and ordered all of the passengers to exit the car. Sergeant Hasselback explained that the protocol requires the officers to perform a pat-down search of each individual for weapons for the safety of the officers. Upon searching defendant, who was one of the car’s passengers, Sergeant Has-selback felt a bulge in defendant’s front pants pocket. The officer retrieved the item, which he found to be a cigarette package. Sergeant Hasselback testified that he opened the package because “a cigarette package is large enough to hold a weapon.” Upon looking inside the package, he saw a crack pipe. Crack cocaine was also found inside the package.
 

 |4Because Trooper Cuccia was not available to testify at the suppression hearing, the district court took judicial notice of his testimony given at the preliminary hearing conducted on August 7, 2008. Trooper Cuccia testified that he participated in the traffic stop that led to defendant’s arrest. After he obtained consent to search the car, Trooper Cuccia ordered all of the occupants to exit the vehicle, with the exception of a three-year-old girl who was in the back seat. Trooper Cuccia then conducted a pat-down search of the driver while Sergeant Hasselback conducted a pat-down search of defendant. Trooper Cuccia testified that Sergeant Hasselback found a cigarette pack containing a crack pipe and three rocks of crack cocaine on defendant’s person. Upon searching the car, Trooper Cuccia recovered cocaine and Valium tablets from another passenger’s purse. Defendant and the other passenger were then arrested.
 

 Defendant testified at the suppression hearing, describing the pat-down search of his person. He explained that Sergeant Hasselback removed a cigarette box from his right front pocket. The officer looked inside the box and dumped its contents onto the hood of the car. Defendant testified that although Sergeant Hasselback did not tell him he was under arrest, he assumed at some point that he was.
 

 LAW, DISCUSSION AND ANALYSIS
 

 Defendant does not challenge the initial stop of the vehicle in which he was a passenger, conceding that the officers made a valid traffic stop based on a moving violation. Nor does defendant challenge the validity of the consent to the search of the vehicle. Instead, defendant argues that the officer’s seizure of the cigarette box containing crack cocaine from his pocket was illegal in that it | r,exceeded the permissible scope of a
 
 Ter
 
 ry
 
 [3]
 
 pat-down frisk for weapons. The State responds that the officer was justified in conducting a pat-down of defendant for safety purposes, and that the officer’s actions in seizing and opening the cigarette package were within the permissible scope of a pat-down search.
 

 In a hearing on a defense motion to suppress the evidence, the State has the burden of establishing the admissibility of evidence seized without a warrant. LSA-C.Cr.P. art. 703 D,
 
 State v. Manson,
 
 01-159, p. 5 (La.App. 5 Cir. 6/27/01), 791 So.2d 749, 755,
 
 writ denied,
 
 01-2269 (La.9/20/02), 825 So.2d 1156. The exclusionary rule bars evidence obtained either during or as a direct result of an unlawful invasion.
 
 Wong Sun v. U.S.,
 
 371 U.S. 471, 484-85, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963). Evi
 
 *911
 
 dence recovered as a result of an unconstitutional search and seizure may not be used in a resulting prosecution.
 
 State v. Hams,
 
 00-1930, p. 3 (La.App. 5 Cir. 4/11/01), 786 So.2d 798, 801-802.
 

 Once an officer has lawfully stopped a vehicle for a routine traffic violation, he is authorized to order both the driver and passengers out of the vehicle pending completion of the stop.
 
 State v. Gomez,
 
 06-417, p. 7, (La.App. 5 Cir. 11/28/06), 947 So.2d 81, 85 citing
 
 Maryland v. Wilson,
 
 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). Additionally, an officer conducting a traffic stop may perform a pat-down search of a driver and passengers upon reasonable suspicion that they may be armed and dangerous.
 
 Knowles v. Iowa,
 
 525 U.S. 113,118,119 S.Ct. 484, 488, 142 L.Ed.2d 492 (1998); LSA-C.Cr.P. art. 215.1. Such a search “must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.”
 
 Terry v. Ohio,
 
 392 U.S. at 26, 88 S.Ct. at 1882. This limited protective search is justified under circumstances where a reasonably prudent person in those circumstances would be warranted in the belief |fithat his safety or the safety of others was in danger.
 
 Terry,
 
 392 U.S. at 27, 88 S.Ct. at 1883;
 
 State v. Boyer,
 
 07-0476, p. 20 (La.10/16/07), 967 So.2d 458, 471. “[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or ‘hunch,’ but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.”
 
 Terry,
 
 392 U.S. at 27, 88 S.Ct. at 1883.
 
 See also, State v. Boyer,
 
 07-0476 at 20, 967 So.2d at 471.
 

 Our jurisprudence has recognized that there is potential danger for an officer even during a routine traffic stop.
 
 State v. Landry,
 
 588 So.2d 345, 347 (La.1991).
 

 Sergeant Hasselback testified he removed the occupants from the car prior to searching it in order to comply with his department’s protocol, which arises out of a concern for officer safety. In this instance, the vehicle search would require that the officers turn their backs on the subjects they had removed from the car. This was of particular concern in this instance because the car’s occupants outnumbered the officers, and they had acted in a suspicious manner from the time the officers initiated the stop.
 

 Sergeant Hasselback further testified that when he stopped the vehicle, he immediately noted the occupants were moving around a great deal. Trooper Cuccia testified that when he spoke with the car’s occupants, they all behaved nervously and gave conflicting information. Sergeant Hasselback testified that he has been with the State Police since 1995, and based on his experience, he found the subjects’ behavior to be peculiar. The officers also learned that the driver of the vehicle had a prior narcotics conviction.
 

 Applying the foregoing law to the facts as testified to by the officers, we find that Sergeant Hasselback in the instant case had a reasonable, objective and particularized basis for conducting a pat-down weapons search of defendant. 17Accordingly, we find that Sergeant Has-selback was justified in conducting a pat-down frisk of defendant for weapons.
 

 Having found the pat-down search for weapons was lawful, the question now becomes whether Sergeant Has-selback exceeded the permissible scope of the search by seizing the cigarette package and the narcotics it contained. The “plain feel” exception to the warrant requirement for the seizure of evidence allows an officer conducting a legally valid pat-down search to seize contraband when the incriminating character of the object is immediately ap
 
 *912
 
 parent to the officer without an additional form of search or examination to identify it as contraband.
 
 Minnesota v. Dickerson,
 
 508 U.S. 366, 375-76, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993);
 
 State v. Boyer,
 
 07-0476 at 22, 967 So.2d at 472.
 

 Sergeant Hasselback testified that while patting down defendant’s clothing, he felt a bulge in defendant’s front pants pocket. The officer reached into the pocket and retrieved the item, which proved to be a cigarette package. He could not remember whether the package had a lid, or if it did, what kind of lid it had. He explained that based on his law enforcement experience, the package was large enough to hold a weapon such as a knife or razor blade, so he looked inside of it. Upon looking inside of the package, he discovered it held a crack pipe, which he immediately recognized as contraband. Sergeant Hasselback also found crack cocaine inside the cigarette package.
 

 Sergeant Hasselback was questioned on cross examination about the bulge that he felt in defendant’s pocket as follows:
 

 Q. Isn’t it time officer that when you frisked Scott Brown for officer safety, you didn’t feel anything that was immediately apparent as contraband or a weapon upon touching?
 

 A., I felt a bulge in his front pocket.
 

 Q. What did you believe the bulge was when you felt it?
 

 |SA. I don’t know.
 

 Q. You didn’t know it was a weapon when you felt it?
 

 A. No, I didn’t.
 

 Q. You didn’t know it was contraband when you felt it?
 

 A. No. I didn’t.
 

 Q. So if you didn’t believe it was a weapon or contraband when you felt it, why did you go into his pocket?
 

 A. I didn’t believe, I didn’t know.
 

 Q. So if you didn’t know, why did you go into his pocket?
 

 A. I had to find out if he had a weapon.
 

 In
 
 State v. Sheehan,
 
 97-2386 (La.App. 4 Cir. 12/9/98), 740 So.2d 127, another case involving a cigarette package, a police officer noticed a partially open cigarette package in the defendant’s shirt pocket during a pat-down search. The officer testified that he searched the cigarette package for a razor blade, and found crack cocaine. The Fourth Circuit upheld the search, finding that based on the officer’s “past experience of knowing that razor blades are often concealed in cigarette packs, removing and looking at the cigarette pack was a reasonable intrusion designed to discover a weapon.”
 
 Id.
 
 at 8, 740 So.2d at 131.
 

 The Louisiana Supreme Court reversed, however, stating:
 

 ... [T]he seizure and search of the cigarette pack from relator’s shirt pocket, which led to the unfolding of crumpled cellophane at the bottom of the pack and to the discovery of a single rock of cocaine concealed within the cellophane, exceeded the permissible scope of the pat-down frisk sanctioned by
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and “amounted to the sort of evidentiary search that
 
 Te'rry
 
 expressly refused to authorize....”
 
 Minnesota v. Dickerson,
 
 508 U.S. 366, 378, 113 S.Ct. 2130, 2139, 124 L.Ed.2d 334 (1993).
 

 State v. Sheehan,
 
 99-0725 (La.7/2/99), 767 So.2d 1
 
 (per
 
 curiam).
 

 Sergeant Hasselback, like the officer in
 
 Sheehan,
 
 testified that he knew razor blades and other weapons are often carried in cigarette packages. However, given|flthe express prohibition against this type of search in
 
 Sheehan,
 
 that knowledge did not give Hasselback sufficient justifica
 
 *913
 
 tion for the search and seizure of defendant’s cigarette pack.
 

 In
 
 State v. Morton,
 
 08-164 (La.App. 5 Cir. 7/29/08), 993 So.2d 651, this Court held that the seizure of narcotics from the defendant’s pocket in the course of a
 
 Terry
 
 pat-down did not fall under the “plain feel” exception to the warrant requirement. In that case, police officers patrolling a high crime area in the early morning hours saw several individuals standing in the street and in a yard adjacent to a residence. The defendant, who was initially sitting on the porch steps, knelt down next to the steps.
 
 Morton,
 
 08-164 at 3, 993 So.2d at 654. Viewing this as suspicious activity, one of the officers instructed the defendant to step away from the porch. The defendant complied with the officer’s order only after the officer drew his gun and issued several warnings.
 
 Id.
 
 The defendant also discarded a chrome object.
 
 Id.
 

 For safety purposes, the officer conducted a pat-down search of the defendant’s clothing to check for weapons. The defendant refused to identify the bulge felt by the officer in defendant’s pocket, so the officer reached into the pocket and retrieved a film canister and a plastic bag containing several rocks of crack cocaine.
 
 Id.
 
 The defendant was then placed under arrest. The officer searched the ai'ea and found a chrome handgun.
 
 Morton,
 
 08-164 at 3-4, 993 So.2d at 654. The defendant was later convicted of possession of a firearm while in possession of cocaine.
 
 Id.
 
 at 2, 993 So.2d at 654.
 

 The defendant appealed the district court’s denial of his motion to suppress the evidence, arguing that the officer illegally seized the cocaine from his pocket when he knew it was not a weapon. This Court determined that the officers had reasonable suspicion to stop the defendant, and that the pat-down search was valid, since it was conducted for safety reasons.
 
 Mar-tan,
 
 08-164 at 8-9, 993 So.2d at 657. This Court further found the officer exceeded the permissible scope of the pat-down when he reached into the defendant’s pocket and retrieved the film canister and plastic bag of narcotics.
 
 Morton,
 
 08-164 at 9, 993 So.2d at 657.
 

 This Court noted that the officer testified he checked the bulge in the defendant’s pocket for safety reasons, and that he wanted to make sure the defendant didn’t have a weapon of any sort.
 
 Morion,
 
 08-164 at 9, 993 So.2d at 658. But the officer failed to describe the bulge; and on cross-examination he stated he could not identify the bulge, although it made him suspicious. He then admitted the bulge did not feel like a gun because it was not large enough.
 
 Id.
 
 This Court held that since the officer “could not immediately identify the bulge as a weapon or contraband by ‘plain feel,’ the subsequent seizure of the narcotics exceeded the lawful scope of a
 
 Terry
 
 pat down.”
 
 Id.
 

 Sergeant Hasselback, like the officer in
 
 Morton,
 
 could not identify the bulge in defendant’s pocket by plain feel, and yet he removed the object. In
 
 Mar-ton,
 
 this Court held that the unlawfully seized evidence was nevertheless admissible under the inevitable discovery doctrine.
 
 Morion,
 
 08-164 at 9-10, 993 So.2d at 658. That doctrine provides that illegally seized evidence is admissible if it inevitably would have been discovered through an independent source.
 
 State v. Lee,
 
 05-2098, p. 23 (La.1/16/08), 976 So.2d 109, 127,
 
 cert. denied,
 
 — U.S. —, 129 S.Ct. 143, 172 L.Ed.2d 39 (2008).
 

 The case before us is distinguishable from
 
 Morton
 
 in that there is nothing in the record to show that the cocaine evidence seized from defendant’s pocket would inevitably have been discovered in a legal manner. According to the testimony, there was nothing the officer could have arrested defendant for at the time of the traffic stop
 
 *914
 
 aside from the discovery of the cocaine. The record contains no evidence that defendant had outstanding warrants. Nor could the drugs found |n inside the other passenger’s purse be attributed to defendant. Therefore, there would have been no search incident to arrest that would have led the officer to find defendant’s cocaine legally.
 

 Likewise, in
 
 State v. Duckett,
 
 99-314 (La.App. 5 Cir. 7/27/99), 740 So.2d 227, this Court held that the seizure of contraband following a lawful pat-down was not authorized by the “plain feel” exception. In that case, the officer did not feel any weapons on the defendant during the pat-down. However, the officer felt a plastic bag, but did not know it contained drugs. In
 
 Duck-ett,
 
 this Court held the seizure of a plastic bag containing white powder and four plastic bags containing marijuana was not justified under the “plain feel” exception, concluding that the police exceeded the lawful bounds of a
 
 Terry
 
 frisk because the officer had to “further manipulate” the bag in order to determine it contained drugs.
 
 Duckett,
 
 99-814 at 10, 740 So.2d at 232. Similarly, in the instant case, it was not immediately apparent to Sergeant Hassel-back that the bulge contained a weapon or contraband.
 

 State v. Barney,
 
 97-777 (La.App. 5th Cir.2/25/98), 708 So.2d 1205, is also pertinent. There the defendant was stopped after he fled when he saw two marked police cars. An officer conducted a pat-down search and felt what he thought was a matchbox in the pocket of defendant’s jeans. The officer removed the matchbox, opened it, and found cocaine. This Court held that opening the matchbox to view its contents exceeded the permissible bounds of the frisk under
 
 Terry,
 
 explaining that “[Ojnce the matchbox left Barney’s possession, it and any hypothetical weapon contained inside it ceased to be a threat to the officers’ safety. The officer’s opening of the matchbox to view its contents exceeded the permissible bounds of the frisk under
 
 Terry
 
 and
 
 Dickerson,
 
 because the matchbox itself was not contraband, and any threat of harm to the officers ceased upon [Officer] Farrell’s removal of it from Barney’s pocket. This police behavior is exactly the |12sort of further invasion of privacy prohibited by Dickerson.”
 
 State v. Barney,
 
 708 So.2d at 1211.
 

 The following testimony of Officer Has-selback illustrates the similarity between the facts of the instant case and that of
 
 Barney
 
 concerning Officer Hasselback’s opening and looking inside of defendant’s cigarette box:
 

 Q. Now, you testified that the reason you opened the cigarette box was because, in your experiences as an officer sometimes a cigarette box has a weapon. That’s your testimony, right?
 

 A. Yes, ma’am.
 

 Q. So, even if there was a weapon inside, Scott Brown wouldn’t have had access to it, correct?
 

 A. That’s correct.
 

 We find the facts regarding the search in the case before us analogous to those in
 
 Sheehan, Morton, Duckett,
 
 and
 
 Barney.
 
 In the instant case, the officer testified that he felt a bulge, not a weapon or contraband, during the pat-down. As in
 
 Morton
 
 and
 
 Duckett,
 
 because the officer could not identify the bulge as a weapon or contraband by plain feel, the subsequent seizure of the bulge exceeded the lawful scope of a
 
 Terry
 
 pat-down. Furthermore, even if the officer was justified in removing the bulge from defendant’s pocket in order to determine if defendant had a weapon and although the officer testified that he was concerned that the cigarette package contained a weapon, as in
 
 Barney,
 
 once the package was no longer in the possession of defendant, its contents were
 
 *915
 
 no longer a threat to the officers’ safety. Thus we find although the initial pat-down was legal, the seizure and search of the cigarette package and its contents taken from defendant’s pocket exceeded the permissible limits of a
 
 Terry
 
 search. Consequently, the evidence seized from the cigarette package was not admissible since it was the product of an illegal search. Based on the foregoing, we find that the district court erred in denying defendant’s motion to suppress evidence.
 

 {^CONCLUSION
 

 For the foregoing reasons, the district court’s ruling on defendant’s motion to suppress as well as defendant’s conditional guilty plea under
 
 Crosby
 
 are hereby vacated. This matter is remanded to the district court for further proceedings consistent with this opinion.
 

 CONVICTION VACATED; MATTER REMANDED.
 

 [1]
 

 . Defendant also pleaded guilty on the same date to illegal use of controlled dangerous substances in the presence of a minor, a violation of LSA-R.S. 14:91.13, which offense is a misdemeanor. Since defendant only appealed his felony conviction, defendant's misdemeanor conviction is not part of this appeal.
 

 [2]
 

 . The officer's name is alternately spelled "Hasselback” and "Hasselbach” in the record.
 

 [3]
 

 .
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).