WILLIAMS, J.
 

 | ,The defendant, John F. Cooper, was charged by bill of information with armed robbery, a violation of LSA-R.S. 14:64. Subsequently, the defendant entered a plea of guilty as charged, reserving the right to seek appellate review of the trial court’s denial of his motion to suppress the evidence, pursuant to
 
 State v. Crosby,
 
 338 So.2d 584 (La.1976). He was sentenced to serve 32 years of imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Defendant appeals the denial of his motion. For the following reasons, we affirm.
 

 
 *877
 
 FACTS
 

 On the morning of August 3, 2004, Shreveport Police Corporal Raymond Bor-delon responded to an armed robbery reported by an employee of American Cash Depot, located on Youree Drive. According to Sonja Hoppaugh, the robbery victim, she was sitting at her desk when she heard a noise and then a tall black man, wearing a green sweatshirt with a white | ?cloth over his face, pointed a sawed-off shotgun at her and demanded money. The victim handed him approximately $2,300 in cash and a number of checks. The robber took the employee’s keys, purse, and driver’s license and threatened to come back for her if she called the police. Then, the robber told his accomplice to get the victim’s car and they drove away in her green Chevy Lumina.
 

 Shreveport Police Officer Jason Person was on patrol that morning and received a radio dispatch generally describing the individuals who had committed the armed robbery and the victim’s car. About an hour later, Officer Person received a second radio dispatch stating that the victim’s car had been abandoned on Lexington Avenue. While canvassing the area near the location where the victim’s Lumina was found, Officer Person noticed several black men getting into a small vehicle. Officer Person made eye contact with one of the men, who looked startled to see the police. At that time, Officer Person believed they could be the suspects from the armed robbery. After they entered the vehicle and drove away, Officer Person initiated a traffic stop for a broken taillight. Immediately, Officer Person observed that the driver and passengers were very nervous. After some additional questioning, observation of the men’s demeanor, and a tentative identification by the victim, all the occupants in the car were arrested, | including the defendant, his brother, Travis Cooper, Cornell Hudson and the driver, Chris Starks.
 

 Subsequently, the defendant was charged with armed robbery. Prior to trial, defendant filed a pro se motion to suppress evidence in September 2005, and his attorney filed a motion to suppress in January 2006. Then, defendant filed a pro se “Motion to Regress the Motion to Suppress” in March 2006. These motions variously alleged that the police officer did not have reasonable grounds to stop and search the vehicle, that the defendant was unlawfully detained and searched, and that any evidence seized was tainted and inadmissible. After a hearing in August 2006, the court denied defendant’s pro se motions. In January 2007, the trial court denied the motion to suppress filed by defense counsel. Defendant applied for supervisory review of the trial court’s January 2007 denial of his motion to suppress. This court denied the writ, finding no error in the court’s denial of the motion.
 
 State v. Cooper,
 
 42,857 (La.App.2d Cir.8/23/07).
 

 In August 2007, at the hearing on defendant’s motion to suppress identification, Officer Person testified that on the morning of the robbery, he received a radio dispatch that gave physical descriptions of the suspects and stated that the victim’s vehicle had been abandoned. Officer Person drove to the abandoned vehicle’s location, where he observed a green latex glove on 14the ground near the victim’s car. Upon arrival of other officers, Officer Person left the scene and drove down the street. Approximately 1,000 feet from the victim’s vehicle, he noticed several large men walking toward a brown Chevy Metro parked on the street. Officer Person testified that his attention was drawn by the sight of these large men getting into a small car and by the startled look of one of the men when he saw the officer.
 

 When the vehicle drove away, Officer Person noticed that a taillight was out. At
 
 *878
 
 that time, he turned on his overhead lights and stopped the vehicle for an equipment violation. Officer Person stated that when asked for his license, the driver gave a long explanation for not having his license at the time. Officer Person testified that in his experience, the driver’s answer to a simple question differed from the type normally given by a person in a traffic stop and raised his suspicion. Once another officer arrived to assist with the traffic stop, Person asked all the individuals to step out of the car because “they were piled up in that car and I couldn’t see what was going on inside the car, I was kind of concerned.” Officer Person asked the men where they had come from and they gave vague, inconsistent answers. He noticed that the passengers displayed a type of nervousness that, from his experience, was consistent with someone who had just committed a crime.
 

 1 r,Officer Person testified that he observed some of the men’s pockets were bulging and he conducted a pat down search for weapons for officer safety. When asked, Travis Cooper said the bulge in his pocket was approximately $40 in cash. Officer Person stated that because the bulge was too large for that sum, he asked to remove the object and Travis Cooper gave his verbal consent. Contrary to Cooper’s statement, the amount of money removed was at least two hundred dollars. Officer Person testified that as he removed the money from Cooper’s pocket, he also observed a green latex glove similar to the glove seen near the robbery victim’s abandoned car. He stated that he also recovered money from the defendant, but could not remember the amount. Officer Person then advised the detective assigned to the armed robbery about the traffic stop findings.
 

 Shreveport Police Corporal Michael Crisp testified that he assisted Officer Person at the traffic stop. Corp. Crisp stated that he handcuffed all four occupants of the vehicle and advised them of their
 
 Miranda
 
 rights. He testified that although his usual procedure when placing handcuffs on a person was to immediately advise him of his
 
 Miranda
 
 rights, he could not specifically recall when he advised the defendant of his rights in this case.
 

 Corporal Raymond Bordelon testified that when he arrived at the scene of the armed robbery, the victim stated that after she had opened the | r,office safe, she heard a loud crash and then a black man, wearing a green sweatshirt with a white cloth over his face, pointed a sawed-off shotgun at her and demanded money. The robber took cash and a number of checks from her, then he and an accomplice fled the scene in her car. After taking the victim’s statement, Bordelon was ordered to drive her to the location of the traffic stop, 64th St. and Southern Avenue, to try to identify the detained suspects. He testified that the victim remained in his car to view the suspects. When the first suspect stepped out of the police car, the victim stated that he might be the robber, but she was not sure. However, the victim then said she recognized the pants the suspect was wearing as the pants worn by the robber.
 

 Shreveport Police Detective Michael McConnell investigated the armed robbery and testified that he talked with the victim at the scene of the traffic stop and that she had made a “tentative identification” of the suspects, meaning that the men matched the description of the robbers as far as height, weight, stature, and clothing. McConnell stated that prior to having the men taken to the detectives’ office, he considered the totality of the circumstances, including the facts that the suspects were seen in close proximity to the location where the victim’s vehicle was found, they 17matched the general description of the
 
 *879
 
 robbers and each was in possession of a large amount of cash.
 

 At the conclusion of the hearing, there was a joint stipulation that the video and audio tapes recorded by the police equipment during the traffic stop were admitted into evidence. After considering the testimony adduced at the hearing and reviewing the police tapes of the traffic stop, the trial court issued a written opinion finding that there was reasonable suspicion to stop the vehicle because of the traffic violation and because the individuals fit the description of the suspected robbers, and that the officer did not act improperly in asking general questions prior to advising the defendant of his
 
 Miranda
 
 rights. The court also determined that the police reasonably detained the suspects after developing additional suspicion of criminal activity based upon the suspects’ inconsistent answers to questions, their nervousness and the recovery of a relatively large amount of cash from the suspects after a patdown search for officer safety. Accordingly, the trial court denied the defendant’s motion to suppress and concluded that all evidence seized by the state could be used against the defendant at trial.
 

 Subsequently, the defendant entered a
 
 Crosby
 
 plea of guilty to armed robbery, reserving his right to seek appellate review of the denial of his motion to suppress. The trial court sentenced defendant to serve 32 years at [shard labor without benefit of parole, probation or suspension of sentence. This appeal followed.
 

 DISCUSSION
 

 A. Initial Stop
 

 The defendant contends the trial court erred in denying his motion to suppress. Defendant argues that the traffic stop was not legitimate because Officer Person made the stop to investigate an armed robbery and not to cite the driver for a traffic violation.
 

 The decision to stop a vehicle is reasonable where the police officer has probable cause to believe a traffic violation has occurred.
 
 Whren v. U.S.,
 
 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996);
 
 State v. Barnard,
 
 37,032 (La.App.2d Cir.5/14/03), 847 So.2d 99. A traffic stop could be made upon satisfying the lesser burden of reasonable suspicion of the offense.
 
 U.S. v. Santiago,
 
 310 F.3d 336 (5th Cir.2002). A violation of a traffic regulation provides reasonable suspicion to stop a vehicle.
 
 State v. Davis,
 
 09-452 (La.App. 5th Cir.1/26/10), 31 So.3d 513. The subjective intent of the officer making the traffic stop is irrelevant, as long as he observed the traffic violation.
 
 Whren, supra.
 

 Furthermore, a law enforcement officer may stop a person reasonably suspected of committing criminal activity and demand his name, address, and explanation of his actions. LSA-C.Cr.P. art. 215.1;
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Flight, nervousness or a startled look may be a factor under LSA-C.Cr.P. art. 215.1 in finding a reasonable cause to stop a person.
 
 State v. Furlow,
 
 34,339 (La.App.2d Cir.2/28/01), 780 So.2d 602,
 
 writ denied,
 
 01-0889 (La.3/15/02), 811 So.2d 895.
 

 In this case, Officer Person testified that he observed that defendant and the other suspects were passengers in a vehicle with a taillight that did not work, a violation of the vehicle equipment law. The videotape from the police car dash camera supported Officer Person’s testimony. Therefore, despite Officer Person’s testimony that when he saw the men, he thought to himself that they may be suspects in the robbery, he possessed the requisite probable cause to initiate the stop for a vehicle equipment violation.
 

 
 *880
 
 In addition, Officer Person was also within his authority to stop the vehicle based upon reasonable suspicion that the individuals had just committed an armed robbery. Officer Person noted that the individuals fit the general description of the robbery suspects, the individuals were walking in the vicinity of the abandoned getaway vehicle, and one of the suspects looked startled when he made eye contact with Officer Person. Thus, the trial court was not clearly wrong in finding that the traffic stop by Officer Person was valid. This argument is without merit.
 

 jjjB. Grounds for Removal from Vehicle and Search
 

 The defendant contends the patdown search was not lawful. Defendant argues that because the officer’s decision to remove defendant from the vehicle and conduct a patdown search did not stem from a concern for officer safety, the money found should be suppressed as fruit of the poisonous tree.
 

 Unreasonable searches and seizures are prohibited by the Fourth Amendment of the United States Constitution and Article 1, § 15 of the Louisiana Constitution of 1974. A warrantless search is unreasonable unless the search can be justified by one of the narrowly drawn exceptions to the warrant requirement.
 
 State v. Tatum,
 
 466 So.2d 29 (La.1985);
 
 State v. Ledford,
 
 40,318 (La.App.2d Cir.10/28/05), 914 So.2d 1168. One of the exceptions to the warrant requirement is a search conducted pursuant to consent. Oral consent is valid.
 
 State v. Hudnall,
 
 39,723 (La.App.2d Cir.5/11/05), 903 So.2d 605.
 

 The United States Supreme Court has held that during routine traffic stops, officer safety concerns justify the minimal intrusion of ordering a driver and passengers out of a vehicle.
 
 Pennsylvania v. Mimms,
 
 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). The Louisiana Supreme Court has also adopted this principle in order to protect both the officer and occupants of the |nvehicle.
 
 State v. Benoit,
 
 01-2712 (La.5/14/02), 817 So.2d 11;
 
 State v. Landry,
 
 588 So.2d 345 (La.1991).
 

 Additionally, an officer conducting a traffic stop may perform a patdown search of the driver and passengers upon reasonable suspicion that they may be armed and dangerous.
 
 State v. Brown,
 
 09-209 (La.App. 5th Cir.12/29/09), 30 So.3d 907, citing
 
 Knowles v. Iowa,
 
 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998). An officer does not need to show that the detained individual was probably armed and dangerous; rather, an officer need only demonstrate a substantial possibility of danger.
 
 Terry, supra.
 

 In this case, Officer Person testified that he asked the passengers to exit the vehicle out of a concern that he could not see what they were doing inside the car. Once he started talking to the passengers, he noticed that they were very nervous and their stories were inconsistent. He also noticed large bulging pockets, and he testified that he “wanted to make sure there were no weapons, so I started patting people down.” The record shows that Officer Person was reasonable in believing that he could have been in danger, because the car’s occupants outnumbered the officers, they seemed nervous and they were suspected of being involved in an armed robbery. Therefore, the request for the men to exit the vehicle and the subsequent patdown for weapons was based upon reasonable, particularized grounds.
 

 | ^Furthermore, the patdown which resulted in the discovery of large sums of money was valid. When Officer Person felt the bulge in Travis Cooper’s pocket
 
 *881
 
 and asked if he could remove the object, Cooper consented. As to the other individuals, Officer Person did not testify specifically as to how he retrieved the money. However, Officer Person can be heard on the police audiotapes asking the men how much money they had and whether he could see the money. By complying with the officer’s request, defendant consented to showing him the cash; therefore, the search was valid. This argument lacks merit.
 

 C. Reasonableness of Roadside Detention
 

 The defendant contends the trial court erred in finding that the detention was reasonable. Defendant argues that the stop was unlawful because it lasted far longer than necessary to cite the driver for a broken taillight.
 

 In conducting a traffic stop, an officer may detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, when there is reasonable suspicion of additional criminal activity. LSA-C.Cr.P. art. 215.1(D). Reasonable cause for an investigatory stop is something less than probable cause, but the officer must have “articulable” ^knowledge of particular facts which, in conjunction with reasonable inferences drawn therefrom, provide reasonable grounds to suspect the detainee of criminal activity.
 
 State v. Flowers,
 
 441 So.2d 707 (La.1983),
 
 cert. denied,
 
 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984). To assess the validity of an investigatory stop, the critical inquiry focuses on the officer’s knowledge at the time of the stop.
 
 State v. Williams,
 
 421 So.2d 874 (La.1982). Flight, nervousness or a startled look may be a factor under. LSA-C.Cr.P. art. 215.1 in finding reasonable cause to stop a person.
 
 State v. Furlow, supra.
 

 In this case, Officer Person had reasonable suspicion to detain the defendant and other occupants for a longer time period than needed to issue a citation. First, Officer Person had noticed the men, who fit the general description of the robbers, walking from an alley in close proximity to the location of the abandoned getaway car and he observed a startled expression on one man’s face in seeing the officer. Secondly, upon stopping the vehicle and questioning the occupants, Officer Person noticed that each of the men was very nervous, a type of nervousness that indicated to him that the individuals may have been involved in criminal activity, and some of their answers were inconsistent with each other. Time was also needed to conduct the patdown searches for the safety of the officers, who were outnumbered by the physically larger occupants of the automobile.
 

 I uBased upon the totality of the circumstances, the trial court did not err in finding that Officer Person had reasonable suspicion to suspect the men of criminal activity, which warranted the officer detaining the men longer. Additionally, the police videotapes show that the entire incident, from the initial stop to the suspects’ arrival at the police station, lasted no longer than 45 minutes. This argument lacks merit.
 

 D. Need to Advise of
 
 Miranda
 
 Rights
 

 The defendant contends he should have been advised of his
 
 Miranda
 
 rights once he was not free to leave. Defendant argues that any statements made after the point at which he was not free to leave and before he was given a
 
 Miranda
 
 warning should be suppressed.
 

 A
 
 Miranda
 
 warning must be given prior to interrogation after a person has been taken into custody or otherwise deprived of his freedom of action in any
 
 *882
 
 significant way. A warning is not required before there is general questioning of citizens in the fact-finding process, but only when the investigation ceases to be exploratory in nature.
 
 State v. Ned,
 
 326 So.2d 477 (La.1976),
 
 citing Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
 

 During the traffic stop, Officer Person began asking the driver some basic questions, such as where he had come from and where he was going. The driver said that he was coming from his house on Henderson Street, but | iBthen said that he had just left from “around the corner” where he had picked up the other three men. The driver then stated that he was coming from “their” house and that he had picked up the other three men because they asked for a ride. The officer also asked the passengers general questions, as he was entitled to do under Article 215.1. The officer was not required to advise defendant of his
 
 Miranda
 
 rights before asking such questions. Moreover, the defendant has not identified any statements that he made in the period after he was not free to leave and before he was advised of his
 
 Miranda
 
 rights that should be suppressed. This argument lacks merit.
 

 E. Probable Cause
 

 The defendant contends there was no probable cause to arrest him at the time Corporal Crisp arrived on the scene. The defendant argues that when he was handcuffed he was then under arrest, which was illegal because the police did not have a warrant or probable cause.
 

 A police officer may lawfully arrest a person without a warrant when the officer has reasonable cause to believe that the person has committed an offense. LSA-C.Cr.P. art. 213. Probable cause to arrest exists when the facts and circumstances within the officer’s knowledge are sufficient to justify a man of ordinary caution to believe that the person to be arrested has violated the law.
 
 State v. Jones,
 
 31,613 (La.App.2d Cir.4/1/99), 733 So.2d 127,
 
 writ denied,
 
 99-1185 (La.10/1/99), 748 So.2d 434. All of the information possessed by the officer is to be considered in determining whether probable cause existed.
 
 State v. Buckley,
 
 426 So.2d 103 (La.1983). The quantity and quality of the evidence needed for probable cause are measured by lesser standards than those for conviction at trial.
 
 Buckley, supra; State v. Thigpen,
 
 42,320 (La.App.2d Cir.8/15/07), 963 So.2d 478.
 

 In the present case, Corporal Crisp testified that he went to assist Officer Person with a traffic stop involving possible armed robbery suspects who were seen in close proximity to the location where the victim’s stolen vehicle had been found. Crisp testified that based upon his normal protocol, with that information and where there were four suspects and two officers, he would have discretion to place the men in handcuffs for the safety of both the officers and the suspects and because of a possible pending arrest.
 

 Detective McConnell testified that he made the determination to take the suspects to the police station for further questioning. McConnell stated that at the time of the stop, defendant was in possession of $610 in cash and the two other passengers, Travis Cooper and Cornell Hudson, were each carrying $420 in cash.
 

 Although carrying such an amount of cash can be legitimate, the combination of facts known to the police officer justified a suspicion that the [17money was taken in the armed robbery. Officer Person was aware from speaking with the suspects that neither the defendant nor the other two passengers were employed, and yet defendant was carrying more than $600 in
 
 *883
 
 his pocket. In addition, the officer also knew that defendant fit the general description of the robber, that defendant was present in close proximity to the victim’s abandoned vehicle, that more than one perpetrator had committed the armed robbery and that defendant’s companion was in possession of the same type of green glove found near the robbers’ getaway car. Thus, the cumulative information available to the officers created probable cause to arrest the defendant for armed robbery. Defendant’s argument lacks merit.
 

 F. Identification Procedure
 

 The defendant contends the trial court should have suppressed the victim’s out-of-court identification. Defendant argues that the show-up identification was unduly suggestive and created a likelihood of mis-identification because of the victim’s lack of opportunity to view the offender, her vague description of the robber, and the time lapse of one hour between the robbery and the show-up identification.
 

 The defendant bears the burden of proof on a motion to suppress an out-of-court identification. In order to suppress an identification, the | ^defendant must prove: (1) that the identification was suggestive, and (2) that there was a likelihood of misidentification in the identification procedure. An identification procedure is unduly suggestive if a witness’s attention is focused on the defendant.
 
 State v. Hawkins,
 
 572 So.2d 108 (La.App. 1st Cir.1990). The factors which courts must examine to determine, from the totality of the circumstances, whether the suggestiveness of a lineup presents a substantial likelihood of misidentification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness’s degree of attention; (8) the accuracy of the witness’s prior description of the criminal; (4) the level of certainty demonstrated by the witness; and (5) the time between the crime and the confrontation. Man
 
 son v. Brathwaite,
 
 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). A trial court’s determination of the admissibility of an identification should be accorded great weight and will not be disturbed on appeal unless the evidence reveals an abuse of discretion.
 
 State v. Hawkins, supra.
 

 In this case, the victim would not have been able to identify the robber’s face, which was covered by a white cloth. However, she provided a description of the offender’s height, build, and clothing. Corporal Bordelon testified that he brought the victim to the scene of the traffic stop for a show-up identification. He indicated that the suspects were presented at a distance |1flof between two car lengths and 150 feet away from where the victim was sitting inside his car. When the first man stepped out of the police car, the victim stated that she recognized his pants as those worn by the robber; however, she was not certain that he was the gunman.
 

 The record shows that the likelihood of misidentification was slim considering the i'obber with the shotgun stood close enough to the victim to grab her and force her to the floor. Contrary to the defendant’s contention, the circumstances of the crime gave the victim a good opportunity to view the robber and identify his clothing. Furthermore, the fact that these men were apprehended at a location in close proximity to the victim’s stolen vehicle and a relatively short time after the robbery was committed lessened the chance of mis-identification. Therefore, the trial court did not abuse its discretion in denying the motion to suppress the identification. This argument is without merit.
 

 G. Confession
 

 The defendant contends his confession was not free and voluntary. Defendant
 
 *884
 
 argues that even though no testimony was produced as to the substance of the confession, the trial court likely considered the allegation that defendant had confessed in ruling on the motion to suppress.
 

 12nIn the context of rulings on pretrial motions, Louisiana courts have held that when a defendant proceeds to trial without raising an issue which was the subject of a pending pretrial motion, he waives his right to have the motion heard or ruled upon.
 
 State v.
 
 Fletcher, 02-707 (La.App. 5th Cir.12/30/02), 836 So.2d 557,
 
 writ denied,
 
 03-0409 (La.10/10/03), 855 So.2d 334;
 
 State v. Washington,
 
 98-69 (La.App. 5th Cir.1/26/99), 727 So.2d 673.
 

 In his motion to suppress filed in January 2006, defendant alleged that he was “harassed for approximately ten hours” before admitting his involvement in the armed robbery. However, at the hearing on the motion in January 2007, neither the defendant nor his attorney argued this issue. After hearing argument, the trial court asked whether there was anything else in the motion, besides the length of the stop, that the court needed to consider, and defense counsel stated, “No, that covers my motion.”
 

 During the hearing on August 1, 2007, the defendant’s attorney again chose not to make an argument as to the harassment allegation. In addition, on September 17, 2007, the court allowed defense counsel to make further arguments if they desired, and defendant’s attorney stated, “Your honor, on behalf of Mr. Cooper, I don’t have anything else to add other than what I — my argument on August 1st.”
 

 121 The record shows that defendant and his counsel were given numerous opportunities to address the harassment which allegedly produced the defendant’s confession, and they declined to raise the issue. Thus, the defendant has waived his right to obtain a ruling on the motion to suppress his confession on the grounds of coercion by physical mistreatment.
 

 After reviewing the entire record, we conclude that the district court did not err in denying the defendant’s motion to suppress evidence. The assignment of error lacks merit.
 

 We have reviewed the record for error patent and found none.
 

 CONCLUSION
 

 For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
 

 AFFIRMED.
 

 APPLICATION FOR REHEARING
 

 Before WILLIAMS, STEWART, CARAWAY, MOORE and LOLLEY, JJ.
 

 Rehearing denied.