WALTER J. ROTHSCHILD, Judge.
| ¡pKalvin Jones was charged in a bill of information with being a felon in possession of firearm in violation of LSA-R.S. 14:95.1. Defendant was arraigned and pled not guilty to the charge. After several continuances, a competency hearing and motion hearings, defendant withdrew his not guilty plea and pled guilty pursuant to North Carolina v. Alford, 400 U.S. 25, 91 *482 S.Ct. 160, 27 L.Ed.2d 162 (1970). The trial court sentenced defendant to 15 years at hard labor without benefit of parole, probation, or suspension of sentence and imposed a fíne of $40.00. Immediately following the sentencing, the State filed a multiple offender bill of information, alleging defendant to be a third felony offender. Defendant stipulated to the multiple bill. The trial court then vacated defendant’s sentence and imposed an enhanced sentence of 17 years at hard labor with the first 15 years to be served without benefit of parole, probation, or suspension of sentence and the ^remaining 2 years to be served without benefit of probation or suspension of sentence.
Following sentencing, defendant filed a motion to amend his guilty plea to include a reservation of an assignment of error, and the trial court denied this motion. However, the trial court issued a nunc pro tunc order, retroactively amending defendant’s guilty plea to have been made pursuant to State v. Crosby, 338 So.2d 584 (La.1976), thereby reserving his right to seek review of the trial court’s denial of his motion to suppress.[1] The trial court then granted defendant’s motion for appeal. FACTS
The record in this case indicates that during the late evening of April 17, 2010, Jefferson Parish Sheriff Deputy Eddie Martin stopped a silver Pontiac Grand Prix for driving without headlights. The vehicle contained three occupants: the driver, a passenger in the front passenger seat, and a rear passenger seated behind the front passenger. The driver was only able to provide registration for the vehicle. While talking to the driver, the officer observed the two passengers reach for their respective doors, which prompted him to move to the other side of the vehicle. With his suspicions aroused, the officer removed defendant from the car, who was in the front passenger seat, to pat him down. As he did so, the officer observed defendant place his hand in his pocket, which provoked the officer to grab defendant’s arm, causing defendant to drop a handgun. The officer then pinned defendant up against the vehicle and handcuffed him, while holding the other passenger at gunpoint until his backup arrived. At this time, the officer advised defendant of his rights, which he indicated he understood. After securing Rdefendant, the officer noticed an object covered in a white sheet inside the vehicle near where defendant had been sitting. From under the sheet, what appeared to be the muzzle of a rifle protruded. The object turned out to be an assault rifle.
After being transported to the police station, defendant was informed of his rights for a second time. He executed a Rights of Arrestee form, waived his rights, and gave a statement, in which he admitted to having sole possession of the handgun and the assault rifle.

ANDERS BRIEF

Under the procedure set forth in State v. Benjamin, 573 So.2d 528, 530 (La.App. 4 Cir.1990),[2] appointed appellant counsel has filed an Anders brief pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and State v. Jyles, 96-2669, p. 3 (La.12/12/97), 704 So.2d 241, *483 242 (per curiam), asserting that he has thoroughly reviewed the trial court record and cannot find any non-frivolous issues to raise on appeal. Accordingly, appointed counsel requests to withdraw as counsel of record.

DISCUSSION

In Anders, the United States Supreme Court stated that appointed appellate counsel may request permission to withdraw if he finds his ease to be wholly frivolous after a conscientious examination of it. The request must be accompanied by “ ‘a brief referring to anything in the record that might arguably support the appeal’ ” so as to provide the reviewing court “with a basis for determining whether appointed counsel have fully performed their duty to support their clients’ appeals to the best of their ability” and to assist the reviewing court “in making the critical determination whether the appeal is indeed so frivolous that ^counsel should be permitted to withdraw.” McCoy v. Court of Appeals of Wisconsin, Dist. 1, 486 U.S. 429, 439, 108 S.Ct. 1895, 1902, 100 L.Ed.2d 440 (1988).
In State v. Jyles, 96-2669 at 2, 704 So.2d at 241, the Louisiana Supreme Court stated that an Anders brief need not tediously catalog every meritless pretrial motion or objection made at trial with a detailed explanation of why the motions or objections lack merit. The court explained that an Anders brief must demonstrate by full discussion and analysis that appellate counsel “has cast an advocate’s eye over the trial record and considered whether any ruling made by the trial court, subject to the contemporaneous objection rule, had a significant, adverse impact on shaping the evidence presented to the jury for its consideration.” State v. Jyles, supra.
When conducting a review for compliance with Anders, an appellate court must conduct an independent review of the record to determine whether the appeal is wholly frivolous. State v. Bradford, 95-929, p. 4 (La.App. 5 Cir. 6/25/96), 676 So.2d 1108, 1110. If, after an independent review, the reviewing court determines there are no non-frivolous issues for appeal, it may grant counsel’s motion to withdraw and affirm the defendant’s conviction and sentence. However, if the court finds any legal point arguable on the merits, it may either deny the motion and order the court-appointed attorney to file a brief arguing the legal point(s) identified by the court, or grant the motion and appoint substitute appellant counsel. Id.
Defendant’s appellate counsel asserts that after a detailed review of the record, he could find no non-frivolous issues to raise on appeal. Counsel maintains that the bill of information was proper, that the trial court did not err in its denial of defendant’s motion to suppress, that defendant’s guilty plea was proper, that the | ^finding of defendant competent to stand trial was proper, and that defendant’s sentence was legal.
The State likewise contends that appellate counsel has shown a conscientious and thorough review of the procedural history of the case and that counsel has east an advocate’s eye over the record, determining there were no significant non-frivolous issues upon which to base an appeal. Consequently, the State requests that this Court affirm defendant’s conviction and sentence.
In appellate counsel’s motion to withdraw, he states that he notified defendant of the filing of the motion and advised him of his right to file a pro se brief. Additionally, this Court sent defendant a letter by certified mail informing him that an An-ders brief had been filed and that he had until December 14, 2011, to file a pro se supplemental brief. Defendant failed to file a supplemental brief.
*484 An independent review of the record supports appellate counsel’s assertion that there are no non-frivolous issues to be raised on appeal.
First, it appears that the bill of information in this case properly charged defendant and presents no non-frivolous issues supporting an appeal. As required, it plainly, concisely, and definitely states the essential facts constituting the offense charged. It also sufficiently identifies defendant and the crime charged. See generally LSA-C.Cr.P. arts. 464-66.
Second, as reflected by the minute entries and commitment, defendant appeared at each stage of the proceedings against him. He attended his arraignment, his guilty plea, and his sentencing. As such, defendant’s presence does not appear to present any issue that would support an appeal.
Third, although not argued on appeal, the merits of defendant’s Crosby claim are considered. A review of the denial of defendant’s motion to suppress reveals no issues supportive of an appeal: both the physical evidence and 17statements were lawfully obtained. Regarding the physical evidence, this Court recognizes that the decision to stop a vehicle is reasonable when the police have probable cause to believe that a traffic violation has occurred. State v. Gomez, 06-417, p. 5 (La.App. 5 Cir. 11/28/06), 947 So.2d 81, 84. In State v. Winfrey, 359 So.2d 73, 76 (La.1978), the Louisiana Supreme Court found that a traffic stop was lawful when the vehicle was being operated at night without its lights. Since the vehicle in the present case was being operated without headlights around 10:45 p.m., in violation of LSA-R.S. 32:301(1), we find that Deputy Martin had probable cause to initiate the traffic stop.[3]
Once an officer has lawfully stopped a vehicle for a routine traffic violation, he is authorized to order both the driver and passengers out of the vehicle pending completion of the stop. State v. Brown, 09-209, p. 5 (La.App. 5 Cir. 12/29/09), 30 So.3d 907, 911. Additionally, an officer conducting a traffic stop may perform a pat-down search of a driver and passengers upon reasonable suspicion that they may be armed and dangerous. Id. The Louisiana Supreme Court has recognized there is potential danger for an officer even during a routine traffic stop:
A police officer’s stopping a vehicle for a routine traffic violation sets up the possibility of a significant confrontational situation. The motorist may be driving a stolen vehicle, may be transporting contraband, may be in possession of illegal weapons, or may be involved in other criminal activity. The likelihood of danger may also be greater during darkness and in early morning hours, or when there are a number of occupants. A police officer who stops a vehicle for a routine traffic offense may be exposed, according to the circumstances, to a significant risk of attack, and concern for the safety of the officer may be a legitimate and weighty justification for reasonable intrusions into the privacy interests of the occupants of the stopped vehicle.
State v. Landry, 588 So.2d 345, 347 (La. 1991).
|sIn Brown, 09-209 at 3, 30 So.3d at 909, two state troopers stopped a vehicle for a routine traffic violation. Immediately *485 upon stopping the vehicle, the troopers observed movements and nervous behavior by the occupants within the vehicle. Id,., 09-209 at 3, 30 So.3d at 909-10. This, plus the discovery of the driver’s prior narcotics conviction and conflicting information offered by the occupants, prompted the troopers to remove the occupants and conduct a pat down. Id., 09-209 at 6, 30 So.3d at 911. Based on these facts, this Court found the removal and pat down of the occupants was lawful. Id., 09-209 at 6-7, 30 So.3d at 911.
In the instant case, it was late at night when Deputy Martin, alone, stopped the vehicle containing three occupants. This setting, in conjunction with the passengers’ suspicious behavior and the driver’s inability to produce a driver’s license, was sufficient to justify Deputy Martin in removing defendant from the vehicle to conduct a pat down.
Having lawfully obtained the handgun by virtue of the pat down, we find that the seizure of the assault rifle was also lawful pursuant to the automobile exception to the warrant requirement. The automobile exception allows police to search a vehicle without a warrant if a car is readily mobile and probable cause exists to believe it contains contraband. State v. Francois, 04-1147, p. 11 (La.App. 5 Cir. 3/29/05), 900 So.2d 1005, 1013; accord State v. Long, 03-2592, p. 10 (La.9/9/04), 884 So.2d 1176, 1183 n. 6, cert. denied, 544 U.S. 977, 125 S.Ct. 1860, 161 L.Ed.2d 728 (2005). Considering the vehicle had just been stopped and defendant was discovered to be in possession of a handgun, we find that the vehicle was readily mobile and that Deputy Martin had probable cause to believe the vehicle contained contraband. Therefore, the officer’s seizure of the assault rifle was lawful.
^Furthermore, we find defendant’s statement that he possessed the handgun and assault rifle was lawfully obtained. Before an inculpatory statement made during a custodial interrogation may be introduced into evidence, the State must prove beyond a reasonable doubt that the defendant was first advised of his Miranda [4] rights, that he voluntarily and intelligently waived those rights, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducement, or promises. State v. Cambrice, 10-26, p. 19 (La.App. 5 Cir. 4/26/11), 64 So.3d 363, 375.
Defendant was twice informed of his rights — once on the scene and again at the police station — and executed a waiver of rights form prior to offering a statement. The record reveals no indication that defendant’s waiver and subsequent statement were not voluntarily and intelligently given. As a result, we find .that defendant’s statement was lawfully obtained.
Fourth, defendant pled guilty as charged and this Court has held that if a defendant pleads guilty, he normally waives all non-jurisdictional defects in the proceedings leading up to the guilty plea, and precludes review of such defects either by appeal or post-conviction relief. State v. Wingerter, 05-697, p. 5 (La.App. 5 Cir. 3/14/06), 926 So.2d 662, 664.
This Court has also held that once sentence is imposed, only those guilty pleas that are constitutionally infirm may be withdrawn by appeal or post-conviction relief. State v. McCoil, 05-658, p. 7 (La.App. 5 Cir. 2/27/06), 924 So.2d 1120, 1124. A guilty plea is constitutionally infirm if it is not entered freely and voluntarily, if the Boykin colloquy is inadequate, or when a defendant is induced to enter the plea by a *486 plea bargain or what he justifiably believes was a | mplea bargain and that bargain is not kept. McCoil, supra. In such a case, the defendant has been denied due process of law in that the plea was not given freely and knowingly. State v. Dixon (La.1984), 449 So.2d 463, 464.
The record shows that defendant was aware he was pleading guilty to one count of felon in possession of a firearm. The waiver of rights form, commitment, and plea colloquy all indicate that he was advised of his right to a judge or jury trial, his right to confrontation, and his privilege against self-incrimination, as required by Boykin v. Alabama.[5] Defendant also indicated during the colloquy that he understood that he was waiving these rights.
Defendant further stated that he had not been forced, coerced, or threatened to plead guilty. He was informed that by pleading guilty his guilty plea could be used to enhance a penalty for any future felony conviction. He was also advised of the sentencing range, that he would be sentenced to 15 years at hard labor without benefits in the event he pled guilty, and of the prescriptive periods for seeking post-conviction relief and appellate review.
Fifth, defendant’s stipulation to the multiple offender bill was proper. Defendant was advised of and waived his rights. He was informed of the sentencing range and the sentence that would be imposed in the event he pled guilty. And he was again advised of the prescriptive periods for seeking post-conviction relief and appellate review.
Lastly, defendant’s sentence does not present issues for appeal. His original sentence and his enhanced sentence were both within the sentencing range prescribed by statute. See LSA-R.S.14:95.1 and 15:529.1. Moreover, since his sentences were imposed pursuant to plea agreements, LSA-C.Cr.P. art. 881.2(A)(2) _J^precludes review of them. State v. Washington, 05-211, p. 5 (La.App. 5 Cir. 10/6/05), 916 So.2d 1171, 1173.
Because appellant counsel’s brief adequately demonstrates by full discussion and analysis that he has reviewed the trial court proceedings and cannot identify any basis for a non-frivolous appeal and an independent review of the record supports counsel’s assertion, defendant’s conviction and sentence are hereby affirmed and appellate counsel’s motion to withdraw as attorney of record is granted.

ERROR PATENT DISCUSSION

The Defendant requests an error patent review. However, this Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990), regardless of whether defendant makes such a request. This review has revealed no errors patent which require corrective action.

DECREE

Accordingly, for the reasons assigned herein, defendant’s conviction and sentence are affirmed and appellate counsel’s motion to withdraw as attorney of record is granted.

CONVICTION AND SENTENCE AFFIRMED; MOTION TO WITHDRAW GRANTED

. Although defendant pled guilty pursuant to State v. Crosby, 338 So.2d 584 (La.1976), he did not raise on appeal the trial court's denial of his motion to suppress.

. The procedure set forth in Benjamin for compliance with Anders was sanctioned by the Louisiana Supreme Court in State v. Mouton, 95-0981, pp. 1-2 (La.4/28/95), 653 So.2d 1176, 1177 (per curiam), and adopted by this Court in State v. Bradford, 95-929, pp. 3-4 (La.App. 5 Cir. 6/25/96), 676 So.2d 1108, 1110.

. LSA-R.S. 32:301 provides in pertinent part: "Every vehicle upon a highway within this state shall display lighted lamps and illuminating devices as hereinafter respectively required for different classes of vehicles subject to exception with respect to parked vehicles at any of the following times: (1) At any time between sunset and sunrise.”

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694(1966).

. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).