917 So.2d 615 (2005)
STATE of Louisiana
v.
McDonald BESSIE.
No. 05-KA-284.
Court of Appeal of Louisiana, Fifth Circuit.
November 29, 2005.
*617 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Juliet Clark-Appellate Counsel, Assistant District Attorneys, Gretna, Louisiana, for Appellee, State of Louisiana.
Margaret S. Sollars, Louisiana Appellate Project, Thibodaux, Louisiana, for Appellant, McDonald Bessie.
Panel composed of Judges JAMES L. CANNELLA, SUSAN M. CHEHARDY, and JAMES C. GULOTTA, Pro Tempore.
SUSAN M. CHEHARDY, Judge.
On June 27, 2003, the Jefferson Parish District Attorney filed a bill of information charging defendant, McDonald Bessie, with possession of cocaine in violation of La. R.S. 40:967 C. Defendant was arraigned on June 30, 2003 and pled not guilty. On August 21, 2003, the trial court denied defendant's motion to suppress evidence.
On September 22, 2003, defendant withdrew his plea of not guilty and tendered a plea of guilty, reserving his right to appeal the denial of his motion to suppress evidence under State v. Crosby, 338 So.2d 584 (La.1976). On that same date, the trial court sentenced defendant to imprisonment at hard labor for two years and six months.[1] Defendant thereafter filed a motion for appeal, which was granted.

Facts
Because defendant's conviction resulted from a guilty plea, the following facts were taken from testimony presented at the hearing on defendant's motion to suppress evidence. Gretna Police Department Officer Raymond J. Lassiegne testified that he was assigned to community policing in the area of Cook Street to Whitney Avenue and Kepler to Virgil *618 Streets on May 15, 2003. At approximately 1:00 p.m. that day, Officer Lassiegne was traveling westbound on Whitney Avenue in his marked police unit, when he observed a man walking eastbound away from the (former) Fischer Housing Development. Officer Lassiegne further testified that, as he drove past defendant, defendant looked at him nervously. Further, as Officer Lassiegne drove away from the subject, Lassiegne watched the subject in his rearview mirror and saw the subject look back over his shoulder numerous times.
The officer, who had been a police officer for 12 years including two as a narcotics officer, explained that, based upon his experience, the subject's nervousness and numerous glances drew his attention to the subject. The officer further explained that his suspicion was also aroused because he had received information from several sources that day or the day before that individuals were traveling to the Fischer Housing Development to buy drugs and then coming back into the city to sell them. Officer Lassiegne admitted that he had heard similar information for the past year. Finally, Officer Lassiegne explained that the area around the Fischer Development was "a high crime area" and "a high narcotics area."
Officer Lassiegne turned his vehicle around, approached defendant, exited his unit, and instructed defendant to place his hands on the front end of the unit for further investigation. Officer Lassiegne testified that, upon reaching the unit, the subject discarded a small metal pipe underneath his unit. After retrieving the object, which the officer determined to be a crack pipe, Officer Lassiegne placed defendant under arrest, advised defendant of his rights, and started to interview defendant.
Officer Lassiegne testified that, while he was interviewing defendant, he observed a small, white rock-like substance inside of defendant's mouth, which the officer believed to be crack cocaine. When defendant tried to swallow the contraband, Officer Lassiegne prevented defendant from swallowing some of the substance. After calling for assistance, Officer Lassiegne was able to extract some of the substance from defendant's mouth. The substance field-tested positive for crack cocaine.
After hearing the arguments of counsel, the trial judge denied the motion to suppress evidence, stating:
All right. The Court has heard the testimony of Officer Lassiegne. The testimony indicated that the Defendant was walking in a particular location where there is drug activity. He was traveling from a location where there was drug activity. The officer had received information concerning drug activity in that area.
He also testified that the Defendant appeared to be nervous and not that he just looked at the unit one time, but four or five times. Based upon the totality of the circumstances, the Court finds that the officer had reasonable suspicion to make the stop. After making the stop, he then, based upon the actions of the Defendant, had probable cause to make the arrest.
The Motion to Suppress is denied.
In his sole assignment of error, defendant argues contends that the trial court erred by failing to suppress physical evidence gathered as the result of an illegal seizure. He contends that there was no reasonable suspicion of criminal activity to justify an investigatory stop by Officer Lassiegne. The State responds that the trial court did not err in denying the motion, relying upon the reasons given by the trial court in its denial.
*619 The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence was derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988, 989 (citing Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); State v. Tucker, 626 So.2d 707 (La.1993)).
The right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is, however, recognized by La.C.Cr.P. art. 215.1,[2] as well as state and federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). The right to make an investigatory stop and question the particular individual detained must be based upon reasonable suspicion to believe that he has been, is, or is about to be engaged in criminal activity. State v. Miskel, 95-584 (La.App. 5 Cir. 1/30/96), 668 So.2d 1299, 1302.
Reasonable suspicion for an investigatory stop is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. State v. Charles, 95-498 (La.App. 5 Cir. 12/13/95), 666 So.2d 1147, 1149. In evaluating whether an officer had the requisite reasonable suspicion for a Terry stop, a "reviewing court must take into account the `totality of the circumstances-whole picture,' giving deference to the inferences and deductions of a trained police officer `that might well elude an untrained person.'" State v. Huntley, 97-965 (La.3/13/98), 708 So.2d 1048, 1049. Further, the Court directed that the reviewing court must also weigh the circumstances known to the police "not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." Id.
The reputation of an area as a high crime area is an articulable fact upon which police officers may rely in determining whether there is reasonable suspicion to conduct an investigatory stop. State v. Ayche, 98-191 (La.App. 5 Cir. 7/28/98), 717 So.2d 1218, 1222, writ denied, 98-2853 (La.2/26/99), 738 So.2d 1061; State v. Miskel, supra at 1302. High crime areas are places in which the nature of the area "gives color to conduct which might not otherwise arouse the suspicion of an officer." Id. In addition, an officer's experience and knowledge of recent criminal patterns and an area's frequent incidence of crimes are factors that may support reasonable suspicion for an investigatory stop. State v. Martin, 99-123 (La.App. 5 Cir. 6/1/99), 738 So.2d 98, 102.
An anonymous tip, corroborated by police surveillance, can supply enough reliability to support an investigatory stop. Alabama v. White, 496 U.S. 325, 333, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). A non-predictive anonymous tip, paired with either independent police corroboration of the readily-observable facts or police observation of unusual or suspicious conduct, can provide the police with reasonable suspicion *620 to temporarily detain the suspect. State v. Robertson, 97-2960 (La.10/20/98), 721 So.2d 1268, 1270-1271. Police officers have the authority to stop someone in a public place, if they reasonably suspect that person is about to commit an offense, even though no illegal activity has taken place and no one has approached the defendant's vehicle to purchase drugs. State v. Jackson, 02-146 (La.App. 5 Cir. 5/29/02), 820 So.2d 1147, 1151 (citing La.C.Cr.P. art. 215.1).
An unconstitutional seizure occurs when the police, without reasonable suspicion, either actually stop an individual or create a situation wherein an actual stop of the individual is imminent. State v. Tucker, 626 So.2d 707, 712 (La.1993). A person's constitutional right to be left alone is only violated, however, when that person is actually stopped without reasonable suspicion or when a stop without reasonable suspicion is imminent, thus rendering any resulting seizure of abandoned property unlawful. State v. Short, 95-742 (La.App. 5 Cir. 1/30/96), 668 So.2d 1240, 1245 (citing State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984)). The trial court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Flagg, 01-65 (La.App. 5 Cir. 7/30/01), 792 So.2d 133, writ denied, 01-2534 (La.9/20/02), 825 So.2d 1159.
After reviewing the record, we find no error in the trial court's denial of the defendant's motion to suppress. Here, an experienced police officer, with previous narcotics training, explained that the subject's nervousness and numerous glances drew his attention to the subject. The officer further explained that his suspicion was also aroused because he had received information from several sources that day or the day before that individuals were traveling to the Fischer Housing Development to buy drugs and then coming back into the city to sell them. Officer Lassiegne also explained that the area around the Fischer Development was "a high crime area" and "a high narcotics area." Accordingly, we find that defendant's assignment of error lacks merit.
Finally, we have reviewed the record for errors patent, according to La. C.Cr.P. art. 920 and found an error requiring remand. In this case, the trial court did not fully advise defendant of the prescriptive period for filing post conviction relief, pursuant to La.C.Cr.P. art. 930.8. Defendant was advised in the waiver of rights forms that he had two years to file for post conviction relief.[3] This Court has held that such an advisal is incomplete. State v. Grant, 04-341 (La.App. 5 Cir. 10/26/04), 887 So.2d 596, 598. Therefore, we remand the case with instructions to the district court to properly inform defendant of the time from which prescription for post-conviction relief runs by sending written notice of such to defendant within ten days of the rendition of this opinion and to file written proof in the record that defendant received the notice. State v. Grant, supra.
AFFIRMED; REMANDED FOR LA. C.CR.P. ART. 930.8 COMPLIANCE.
NOTES
[1] On September 22, 2003, the Jefferson Parish District Attorney also filed a bill of information alleging that defendant was a second felony offender. That same day, defendant stipulated to the multiple bill, reserving his right to appeal the denial of his motion to suppress evidence under State v. Crosby, supra. The trial court vacated the original sentence and sentenced defendant to imprisonment at hard labor for two years and six months, to run concurrently with defendant's sentence in an unrelated case.
[2] La.C.Cr.P. art. 215.1 A provides in pertinent part: "A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions."
[3] Although the commitments indicate that defendant was properly informed of the prescriptive period for filing post-conviction relief, the waiver of rights forms reflect otherwise.