993 So.2d 651 (2008)
STATE of Louisiana
v.
Donald MORTON.
No. 08-KA-164.
Court of Appeal of Louisiana, Fifth Circuit.
July 29, 2008.
*653 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Anne Wallis, Michael Escudier, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Margaret S. Sollars, Attorney at Law, Louisiana Appellate Project, Thibodaux, LA, for Defendant/Appellant.
*654 Panel composed of Judges EDWARD A. DUFRESNE, JR., CLARENCE E. McMANUS, and WALTER J. ROTHSCHILD.
EDWARD A. DUFRESNE, JR., Chief Judge.
On June 21, 2006, the Jefferson Parish District Attorney filed a bill of information charging defendant, Donald Morton, with possession of a firearm while in possession of cocaine, a violation of LSA-R.S. 14:95(E).[1] At his arraignment, defendant pled not guilty. During the course of pretrial proceedings, defendant filed a motion to suppress evidence which the trial court heard and denied. The matter thereafter proceeded to trial before a twelve person jury. After considering the evidence presented, the jury found defendant guilty as charged. Defendant then waived delays, and the trial court sentenced him to seven years at hard labor without benefit of parole, probation, or suspension of sentence. Defendant now appeals.

FACTS
In the early morning hours of April 20, 2006, Deputy Christopher Thomas, along with other deputies of the Jefferson Parish Sheriffs Office, were patrolling a known high crime area in Marrero. At approximately 3:57 a.m., while driving in the 1200 block of Marshall Drive, Deputy Thomas observed several individuals standing in the street and in a yard. In particular, he noticed one subject sitting on the porch steps in the dark and a couple of other subjects standing on the roadway next to a parked car. As the deputies approached the area in marked police units, these individuals attempted to hide near vehicles and behind anything else that was available to them. The officers assisting Deputy Thomas detained two individuals, Sean and Mark Foucher, who were hiding next to vehicles trying to avoid detection.
Deputy Thomas focused his attention on the individual that he had seen sitting on the steps. This person, later identified as defendant, moved from the porch steps and knelt down next to the steps. Seeing this suspicious activity, Deputy Thomas parked his vehicle, exited it, and instructed defendant to step away from the porch. When defendant did not comply, Deputy Thomas drew his weapon and ordered defendant to come out several more times. Defendant eventually complied with the officer's request. However, prior to his coming out, Deputy Thomas observed defendant reach into his waistband and retrieve a chrome object that he threw on the ground. Defendant then walked towards Deputy Thomas.
Because of safety concerns, Officer Thomas immediately handcuffed defendant and conducted a pat down search of his clothing to check for weapons. During the pat down, Officer Thomas felt a bulge in one of defendant's pockets. When defendant refused to identify the object, Deputy Thomas checked defendant's pocket and retrieved a film canister and a plastic bag containing several off-white rock-like substances. A subsequent field test proved that the substance was positive for crack cocaine. Defendant was then placed in the police car while Deputy Thomas went back to the area where he saw defendant discard the chrome object. While searching that area, the officer found a fully loaded chrome nine millimeter handgun.
Defendant testified in his own behalf both at trial and at the suppression hearing. *655 However, his version of events differs from that of Officer Thomas. According to defendant, in the early morning of April 20, 2006, he was sitting on his porch at 1208 Marshall Drive and his neighbors, the Foucher brothers, were just pulling up in their driveway when the police arrived. Defendant testified that he did not move when the officers approached but rather continued to sit on his porch. One officer walked towards defendant's driveway and told him to come off the porch. In response, defendant told the officer that he "stayed there." The officer then drew his gun and said, "Come here." Defendant stood up, retrieved his wallet from his back pocket, got his driver's license out, and told the officer that he lived there. The officer grabbed defendant's hand, brought him into the street, and told him to put his hands on the police vehicle. According to defendant, the police searched him three times and did not seize anything from him. Defendant denied that Deputy Thomas seized cocaine from him. He also denied having a gun in his possession. Defendant claimed that the gun came from an individual named Robert who was in his yard and attempted to run away when the police approached.
Mark Foucher, defendant's neighbor who was also detained that night, testified that the police searched defendant three times and did not recover any weapons or drugs from defendant. He also testified that he did not see defendant discard a chrome object. Mark Foucher corroborated defendant's testimony that an individual named Robert was in defendant's yard and attempted to run from police but his shirt snagged on the handrail next to the steps.

DENIAL OF MOTION TO SUPPRESS EVIDENCE
On appeal defendant challenges the trial court's denial of his motion to suppress evidence. He argues that the police did not observe any suspicious activity or any crime being committed, and therefore, the police did not have reasonable suspicion for an investigatory stop. Defendant further argues that this illegal investigatory stop immediately turned into an arrest without probable cause when the deputy drew his weapon and handcuffed him without ascertaining his identity or his right to be on his own porch. Lastly, defendant asserts that Deputy Thomas unlawfully seized the cocaine in his pocket when he knew it was not a gun. For the reasons which follow, we find no merit to defendant's arguments.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence was derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. State v. Bessie, 05-284 (La.App. 5 Cir. 11/29/05), 917 So.2d 615, 619.
The right of law enforcement officers to stop and interrogate one reasonably suspected of criminal activity is, however, recognized by LSA-C.Cr.P. art. 215.1 as well as state and federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). The right to make an investigatory stop and question the particular individual detained must be based on reasonable suspicion to believe that he has been, is, or is about to be engaged in criminal activity. State v. Bessie, 917 So.2d at 619. The "reasonable suspicion" necessary for an investigatory stop is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement *656 on the individual's right to be free from governmental interference. State v. Young, 05-702 (La.App. 5 Cir. 2/14/06), 938 So.2d 90, 96.
In a hearing on a motion to suppress, the State has the burden of establishing the admissibility of evidence seized without a warrant. LSA-C.Cr.P. art. 703(D). The trial court's denial of a motion to suppress is afforded great weight, and it will not be set aside unless the preponderance of the evidence clearly favors suppression. In determining whether the trial court's ruling on a defendant's motion to suppress is correct, the appellate court is not limited to the evidence adduced at the suppression hearing; it may also consider the evidence presented at trial. State v. Butler, 01-907 (La.App. 5 Cir. 2/13/02), 812 So.2d 120, 124.
When determining whether an investigatory stop was justified by reasonable suspicion, a reviewing court must consider the totality of the circumstances, giving deference to the inferences and deductions of a trained police officer. State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048, 1049. Factors that may support reasonable suspicion for an investigatory stop include an officer's experience, his knowledge of recent criminal patterns, and his knowledge of an area's frequent incidence of crimes. While an individual's mere presence in a high crime area alone is insufficient to justify an investigatory stop, his presence in a high crime area coupled with nervousness, startled behavior, flight or suspicious actions upon the approach of the officers, gives rise to reasonable suspicion for an investigatory stop. State v. Burns, 04-175 (La.App. 5 Cir. 6/29/04), 877 So.2d 1073, 1076. When evaluating the totality of the circumstances, a defendant's evasive conduct in response to police presence is a factor that is accorded significant weight. State v. Enclade, 03-353 (La.App. 5 Cir. 9/16/03), 858 So.2d 8, 13.
In the instant case, considering the totality of the circumstances, we find that the police had reasonable suspicion to stop defendant. The evidence at both the suppression hearing and the trial established that the area was a known high crime area. Specifically, Officer Thomas testified that he and the other deputies were patrolling this area because it is known to be a high drug crime and drug trafficking area. He testified that the police get frequents calls from this area, and that there are also frequent random shootings. In addition, he has personally made arrests in that area for narcotics and weapons offenses. Deputy Michael Borne, one of the assisting officers, testified that there had been a murder at the address where the incident took place three days earlier. There was also testimony about defendant's evasive actions. Deputy Thomas testified that as the officers approached the area, defendant and his companions attempted to hide. In particular, defendant moved from the porch steps and knelt down beside them, and the Foucher brothers attempted to hide behind vehicles. Considering the high crime nature of the area as well as the suspicious actions and evasive conduct displayed by defendant and his companions in the early morning hours, we find that the officers had reasonable suspicion to conduct an investigatory stop. See State v. Adams, 01-3231 (La.1/14/03), 836 So.2d 9, 11, where the Louisiana Supreme Court noted that defendant's flight, furtive gesture in reaching behind to her waistband, and her attempt to conceal herself behind a vehicle in an area known for violent crime, clearly provided a particularized objective basis for an investigatory stop.
*657 Having found reasonable suspicion to stop defendant, the next issue which must be addressed is whether the officer's actions in drawing his weapon and handcuffing defendant elevated the encounter from an investigatory stop to an arrest. Inherent in the right of police to conduct a brief investigatory detention is also the right to use reasonable force to effectuate the detention. There is no question that the use of handcuffs incrementally increases the degree of force that is used in detaining an individual. However, arrest-like features such as the use of drawn weapons and handcuffs may, but do not invariably, render the seizure a de facto arrest. Therefore, when the State seeks to prove that an investigatory detention involving the use of handcuffs did not exceed the limits of a Terry stop, the State must show some specific fact or circumstance that could have supported a reasonable belief that the use of restraints was necessary to carry out the legitimate purpose of the stop without exposing law enforcement officers, the public, or the suspect himself to an undue risk of harm. If the added intrusion is not warranted under particular circumstances, a Terry stop may escalate into a de facto arrest requiring probable cause to render it valid. State v. Porche, 06-0312 (La.11/29/06), 943 So.2d 335, 339-340. See also State v. Broussard, 00-3230 (La.5/24/02), 816 So.2d 1284, 1286-1287.
In the present case, Deputy Thomas testified that he had seized several guns in that area. During the incident, Deputy Thomas observed defendant throw down something chrome. Since defendant had attempted to hide from the deputies, was kneeling next to the porch steps in a dark area, refused to comply with Deputy Thomas' order to come out, and, then, in an area where Deputy Thomas had seized several guns, threw down a chrome object that originally was in his waistband, we conclude that Deputy Thomas was justified in drawing his gun and handcuffing defendant in order to effectuate the Terry stop. Since police officers should not be required to take unnecessary risks in performing their duties, they are authorized to take such steps as are reasonably necessary to protect their safety and to maintain the status quo during the course of a Terry stop. State v. Porche, 943 So.2d at 339. Considering the totality of the circumstances, Officer Thomas was justified in his decision to handcuff defendant as a safety precaution; those actions did not rise to the level of an arrest. See State v. Gray, 99-47 (La.App. 5 Cir. 6/1/99), 738 So.2d 668, and State v. Enclade, 03-353 (La.App. 5 Cir. 9/16/03), 858 So.2d 8, where this court found that the officer's decision to handcuff the defendant during an investigatory stop was justified as a safety precaution and did not rise to the level of an arrest.
Once the police had the reasonable suspicion to stop defendant, the police had the right to conduct a Terry pat down search for weapons. However, such a search "must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." Terry v. Ohio, 392 U.S. at 26, 88 S.Ct. at 1882. When an officer is conducting a pat down search, the "plain feel" exception allows the seizure of contraband where the incriminating character of the object is immediately apparent to the officer without any additional form of search or examination to identify it as contraband. State v. Haywood, 00-1584 (La.App. 5 Cir. 3/28/01), 783 So.2d 568, 577, citing Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993).
During the pat down, the officer felt a bulge in defendant's pockets. Deputy *658 Thomas testified that he checked the bulge as a precautionary measure, "for safety reasons again, I went into his pocket to make sure it wasn't any type of weapon of any sort." However, during his testimony, Deputy Thomas failed to describe the bulge, and on cross-examination, he stated that he could not identify the bulge but it made him suspicious. He then admitted that it did not feel like a gun because it was not large enough. Since Deputy Thomas could not immediately identify the bulge as a weapon or contraband by "plain feel," the subsequent seizure of the narcotics exceeded the lawful scope of a Terry pat down.
Even though the officer did not have the right to seize the narcotics from defendant's pocket, we note that the cocaine would have been inevitably discovered in a search incident to arrest once the officer retrieved the gun thrown down by defendant. "The inevitable discovery doctrine `is in reality an extrapolation from the independent source doctrine: Because the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered.'" State v. Lee, 05-2098 (La.1/16/08), 976 So.2d 109, 127, quoting Murray v. United States, 487 U.S. 533, 539, 108 S.Ct. 2529, 2534, 101 L.Ed.2d 472 (1988). A functional similarity exists between the independent source and the inevitable discovery doctrines because they both seek to avoid excluding evidence the police "would have obtained ... if no misconduct had taken place." The State bears the burden of proving by a preponderance of the evidence that "the information ultimately or inevitably would have been discovered by lawful means...." State v. Lee, 976 So.2d at 127, quoting Nix v. Williams, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984). See also, State v. Vigne, 01-2940 (La.6/21/02), 820 So.2d 533, 539.
In the present case, Deputy Thomas could have retrieved the chrome object dropped by defendant before conducting a pat down search for weapons. Upon discovering that the chrome object that he saw defendant remove from his waistband and drop on the ground was a weapon, Deputy Thomas could have arrested defendant for possession of a firearm by a convicted felon. During the suppression hearing, defendant admitted that he told Deputy Thomas that he was a convicted felon on parole for a drug violation. Therefore, Deputy Thomas had probable cause to arrest defendant for being a felon in possession of a firearm. The search incident to arrest would have led to the inevitable discovery of the cocaine. Accordingly, the trial judge did not err in denying defendant's motion to suppress evidence.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals no errors that require corrective action.
For the reasons set forth herein, we affirm defendant's conviction and sentence.
AFFIRMED.
NOTES
[1] The bill of information also charged defendant, in a second count, with possession of cocaine, a violation of LSA-R.S. 40:967(C). However, the state subsequently dismissed that charge.