MARION F. EDWARDS, Chief Judge.
12Pefendant/appellant, Bobby Wilford (‘Wilford”), takes this appeal from his convictions and sentences on two counts of criminal activity. For reasons that follow, we affirm.
The Jefferson Parish District Attorney filed a bill of information charging Wilford with one count of possession of marijuana, fifth offense, in violation of La. R.S. 40:966(C) (Count 1) and one count of possession of cocaine in violation of La. R.S. 40:967(C) (Count 2). Wilford was arraigned and entered a plea of not guilty to each count. Wilford filed a motion to suppress the evidence that was denied by the trial court. Wilford sought review of that ruling on an application for supervisory writs to this Court. We denied relief on the basis that the application did not contain sufficient information to address the merits of the claim and that Wilford had adequate remedy on appeal.[1]
Subsequently, the State amended the bill of information, reducing Count 1 from possession of marijuana, fifth offense, to possession of marijuana, fourth offense. Wilford withdrew his former pleas of not guilty and tendered pleas of guilty pursuant to State v. Crosby,[2] reserving his right to seek appellate review of |athe denial of his motions to suppress. The court sentenced Wilford to concurrent five-year sentences at hard labor on each count, suspended the sentences, and placed Wilford on active probation for five years. The court further ordered Wilford to pay all fines, fees, and court costs and to perform 100 hours of community service. Wilford filed a timely motion for appeal, seeking review of the trial court’s denial of his motions to suppress, which was granted by the trial court.

FACTS

On Sunday, April 12, 2009, around 11:00 p.m., Jefferson Parish Deputy Tammy Howard, unaccompanied, responded to a report of a burglary of an apartment. Upon her arrival, Deputy Howard conferred with the female occupant of the apartment who had reported the burglary. Wilford, the victim’s boyfriend, was also present at the apartment. Deputy Howard took the information from the victim concerning the burglary while Wilford stood nearby. The deputy went to her vehicle to retrieve the necessary paperwork to complete the report. When she returned to the apartment, Deputy Howard observed Wilford standing in the doorway with his pants down to his ankles, exposing his underwear and a bloody towel wrapped around the bottom of his leg. Deputy Howard asked Wilford what happened. Wilford, who was then nervously pacing back and forth, responded that he saw police in the area earlier, ran, because he had drugs on him, and injured his leg while jumping over a fence.
After hearing this statement from Wilford, Deputy Howard, aware that there had been two earlier reports in the area of *872 an aggravated battery and an armed robbery, placed Wilford in handcuffs “for [her] safety, because [she] didn’t know what the situation was at that point.” On cross-examination, Deputy Howard stated that Wilford was not under arrest when she placed the handcuffs on him. |4She explained that she was alone investigating a crime at the residence and was aware of the other recent crimes in the area. So, she placed Wilford in handcuffs until she could determine exactly what was happening in the residence and so that she would be safe during that investigation.
As she handcuffed Wilford, the deputy observed Wilford drop “two off-white rocks” to the floor by his feet, which she believed to be crack cocaine.[3] At this point, Deputy Howard placed Wilford under arrest and read him his Miranda[4] rights. She then executed a search of Wilford’s person incident to the arrest. This search revealed a clear plastic baggie of marijuana and a clear plastic baggie of crack cocaine in Wilford’s rear right pant pocket. Deputy Howard took Wilford to the hospital for treatment before bringing him into custody.

LAW AND ANALYSIS

In Wilford’s sole assignment of error, he argues that Deputy Howard had neither probable cause to arrest him nor a reasonable suspicion to detain him before he discarded the rocks of crack cocaine. Consequently, he contends that the evidence obtained subsequent to his being handcuffed was obtained in violation of the Fourth Amendment and, therefore, should have been suppressed.
Conversely, the State contends that Wilford’s physical restraint did not amount to an arrest and was justified by the officer’s concern for her safety. The evidence obtained thereafter was lawfully obtained and should not have been suppressed because of the plain view doctrine.
The Fourth Amendment to the United States Constitution and the Louisiana Constitution, Article I, Section 5, protects individuals from unreasonable searches Rand seizures.[5] Although a seizure occurs for Fourth Amendment purposes either when an individual has been subjected to physical restraint or when he submits to the assertion of official authority,[6] no bright-line rule exists for distinguishing between investigatory stops, characterized by a brief restraint imposed on a lesser showing of reasonable suspicion,[7] and arrests based on probable cause.[8] However, it is well established that a police officer may conduct a brief investigatory stop when the officer has a reasonable articulable suspicion of criminal activity.[9] The Terry standard, as codified in La.C.Cr.P. art. 215.1, authorizes police officers to stop a person in a public place whom they reasonably suspect is committing, has committed, or is about to commit an offense and demand that the person *873 identify himself and explain his actions.[10] This Court has recognized that “the threshold of one’s dwelling ... as is the yard surrounding the house,” are public places under the cases interpreting the Fourth Amendment.[11] Reasonable suspicion is something less than probable cause to arrest,[12] though it is more than an officer’s mere unparticularized suspicion or hunch of criminal activity.[13]
In making the determination of whether a police officer had a reasonable suspicion, a reviewing court must take into consideration the totality of the circumstances and give deference to the inferences and deductions of a trained police officer that might elude an untrained person.[14] Factors that may support a reasonable suspicion for an investigatory stop include an officer’s experience, his | (¡knowledge of recent criminal patterns, and his knowledge of an area’s frequent incidence of crimes.[15]
In the instant case, Deputy Howard was at the threshold of the apartment during her encounter with Wilford, a location at which she was legally permitted to be because she was there in response to a report of a burglary. While there, she was confronted with the peculiar incident of Wilford standing in the doorway with his pants down to his ankles, exposing his underwear, and a bloody towel wrapped around the bottom of his leg. In response to the officer’s question about his apparent injury, Wilford voluntarily offered the statement that he had run from the police earlier in the day because he had drugs on him. Additionally, it was eleven o’clock at night, and Deputy Howard was alone and was aware of criminal activity in the area due to her response to the report of a burglary and her knowledge of earlier reports in the area of an aggravated battery and armed robbery.
Considering the totality of the circumstances, including Wilford’s volunteered incriminating statement, his nervous pacing, the lateness of the hour, and the criminal activity in the area, we find that Deputy Howard had a reasonable suspicion to conduct an investigatory stop of Wilford.
Having found that a reasonable suspicion for an investigatory stop existed, the next issue to be addressed is whether the physical restraint of Wilford was warranted and whether the handcuffing elevated the encounter from an investigatory stop to an arrest.
This Court has addressed the law regarding when the use of handcuffs escalates an investigatory stop into, a de facto arrest requiring probable cause, as follows:
17Inherent in the right of police to conduct a brief investigatory detention is also the right to use reasonable force to effectuate the detention. There is no question that the use of handcuffs incrementally increases the degree of force that is used in detaining an individual. However, arrest-like features such as *874 the use of drawn weapons and handcuffs may, but do not invariably, render the seizure a de facto arrest. Therefore, when the State seeks to prove that an investigatory detention involving the use of handcuffs did not exceed the limits of a Terry stop, the State must show some specific fact or circumstance that could have supported a reasonable belief that the use of restraints was necessary to carry out the legitimate purpose of the stop without exposing law enforcement officers, the public, or the suspect himself to an undue risk of harm. If the added intrusion is not warranted under particular circumstances, a Terry stop may escalate into a de facto arrest requiring probable cause to render it valid.... [16]
[12] Further, we noted that, since police officers should not be required to take unnecessary risks in the performance their duties, they are authorized to take such steps as are reasonably necessary to protect their safety and to maintain the status quo during the course of a Terry stop.[17] We have also recognized that, because drugs, guns, and violence often go together, this may be a factor tending to support an officer’s claim of reasonableness.[18]
In the matter before us, the record indicates that Deputy Howard handcuffed Wilford for her safety, testifying that she “didn’t know what the situation was at that point.” Considering the totality of the circumstances, including Wilford’s volunteered incriminating statement, his nervous pacing, the lateness of the hour, the fact that the officer was alone, and the criminal activity in the area, most notably at the residence where the encounter with Wilford occurred, we find that Deputy Howard was justified in handcuffing Wilford as a safety precaution in order to effectuate the Terry stop; those actions did not rise to the level of an arrest.
|8At that point, Deputy Howard observed Wilford drop what turned out to be two rocks of crack cocaine. Under the plain view doctrine, an officer may seize contraband that he believes to be a controlled dangerous substance that inadvertently falls into plain view during a legal investigatory stop when there are exigent circumstances indicating that the defendant will attempt to reclaim it or possibly dispose of it before the officer can obtain a search warrant.[19] Because the rocks fell into plain view during a lawful investigatory stop and Deputy Howard suspected them to be crack cocaine, we find that her seizure of them was lawful.
Once she became aware that the rocks were contraband, Deputy Howard then had probable cause to arrest Wilford. This Court has held that an officer may make a warrantless arrest when the officer has probable cause to believe that the person to be arrested has committed an offense.[20] Probable cause to arrest exists when the facts and circumstances within an officer’s knowledge, and of which he has *875 reasonable, trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime.[21] Deputy Howard’s experience as a law enforcement officer, and her belief that the “off-white” rocks were crack cocaine, was sufficient to give her probable cause to believe that Wilford had committed a crime, namely, possession of cocaine.
After Wilford was placed under arrest, Deputy Howard was then justified in searching Wilford’s person under the search incident to lawful arrest exception to the Fourth Amendment’s warrant requirement. That exception holds that, once a lawful arrest has been made, a warrantless search of the arrestee’s person and of the area within his immediate control is permissible in order to remove any 19weapons from his person and to prevent evidence from being destroyed.[22] Thus, we find that the baggies of marijuana and crack cocaine were lawfully seized under the search incident to lawful arrest exception.
The trial court is afforded great discretion when ruling on a motion to suppress and its ruling will not be disturbed absent an abuse of its discretion.[23] Because the evidence in this case was obtained as a result of a lawful search and seizure, the trial judge did not abuse his discretion in denying Wilford’s motion to suppress the evidence.
This assignment of error has no merit.
The record was reviewed for errors patent.[24] The review reveals no errors patent in this case.
Accordingly, we affirm the convictions and sentences on appeal.

AFFIRMED

. State v. Wilford, 09-827 (La.App. 5 Cir. 10/27/09) (unpublished writ disposition).

. 338 So.2d 584 (La.1976).

. The rocks later tested positive for crack cocaine.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. State v. Liles, 01-573 (La.App. 5 Cir. 11/27/01), 803 So.2d 125, 129.

. California v. Hodari D., 499 U.S. 621, 626, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991).

. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

. State v. Parnell, 07-37 (La.App. 5 Cir. 5/15/07), 960 So.2d 1091, 1097, writ denied, 07-1417 (La. 1/7/08), 973 So.2d 733.

. Terry v. Ohio, supra.

. State v. Dickerson, 10-672 (La.App. 5 Cir. 4/26/11), 65 So.3d 172, 176.

. State v. Parnell, 07-37 (La.App. 5 Cir. 5/15/07), 960 So.2d 1091, 1098 (quoting U.S. v. Santana, 427 U.S. 38, 42, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300 (1976)).

. State v. Massey, 03-1166 (La.App. 5 Cir. 1/27/04), 866 So.2d 965, 968.

. State v. Williams, 10-51 (La.App. 5 Cir. 7/27/10), 47 So.3d 467, 471, writ denied, 10-2083 (La.2/18/11), 57 So.3d 330.

. State v. Burns, 04-175 (La.App. 5 Cir. 6/29/04), 877 So.2d 1073, 1076.

. State v. Martin, 99-123 (La.App. 5 Cir. 6/1/99), 738 So.2d 98, 102.

. State v. Morton, 08-164 (La.App. 5 Cir. 7/29/08), 993 So.2d 651, 657 (citations omitted).

. Id. (citing State v. Porche, 06-0312 (La. 11/29/06), 943 So.2d 335, 339).

. State v. Thomas, 08-521 (La.App. 5 Cir. 1/27/09), 8 So.3d 646, 653, writ denied, 09-0391 (La. 12/18/09), 23 So.3d 928. See, State v. Williams, 10-51 (La.App. 5 Cir. 7/27/10), 47 So.3d 467, writ denied, 10-2083 (La.2/18/11), 57 So.3d 330.

. State v. Micelotti, 07-700 (La.App. 5 Cir. 2/6/08), 979 So.2d 573, 577, writ denied, 08-0539 (La.9/26/08), 992 So.2d 984.

. State v. Austin, 04-993 (La.App. 5 Cir. 3/1/05), 900 So.2d 867, 879, writ denied, 05-0830 (La. 11/28/05), 916 So.2d 143 (citation omitted); La.C.Cr.P. art. 213.

. Austin, 900 So.2d at 879 (citation omitted).

. State v. Freeman, 97-1115 (La.App. 5 Cir. 12/29/98), 727 So.2d 630, 634.

. State v. Rogers, 09-13 (La.App. 5 Cir. 6/23/09), 19 So.3d 487, 493, writ denied, 09-1688 (La.4/9/10), 31 So.3d 382 (citations omitted).

. See, La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).