STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-397

STATE OF LOUISIANA

VERSUS

JAMES J. FLOURNOY

**********

APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, NO. 15-1013
HONORABLE WARREN D. WILLETT, DISTRICT JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of Marc T. Amy, Elizabeth A. Pickett, and James T. Genovese, Judges.

**AFFIRMED.**

**Paula C. Marx**
**Louisiana Appellate Project**
**Post Office Box 80006**
**Lafayette, LA   70598-0006**
**(337) 991-9757**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **James J. Flournoy**

**James P. Lemoine**
**District Attorney**
**Post Office Box 309**
**Colfax, LA   71417-0309**
**(318) 627-3205**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**James D. White, Jr.**
**Assistant District Attorney**
**200 Main Street**
**Colfax, LA   71417**
**(318) 627-2971**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**AMY, Judge.**

Following a traffic stop that resulted in the discovery of methamphetamine, paraphernalia, and weapons, the State charged the defendant with one count of possession with intent to distribute a Schedule II controlled dangerous substance and one count of illegal carrying of weapons while in possession of a controlled dangerous substance. The defendant entered a *Crosby* plea to the possession with intent to distribute charge, reserving his right to challenge the denial of a motion to suppress on appeal. *See State v. Crosby*, 338 So.2d 584 (La.1976). The trial court imposed a sentence of ten years at hard labor. The defendant appeals. For the following reasons, we affirm.

**Factual and Procedural Background**

According to the record, around midnight on August 6, 2015, Officer Normand Walker, Jr., then a deputy for the Grant Parish Sheriff's Office, was on patrol when he noticed that one of the taillights and the license plate light were out on a green Chevrolet Z-71 truck travelling on Dyson Creek Road.[1] Officer Walker testified that he initiated a traffic stop with the driver of the truck, James J. Flournoy, while simultaneously requesting backup from Corporal William McClung, a K-9 officer with the Grant Parish Sheriff's Office, due to the late hour of the stop. The record indicates that Corporal McClung arrived at the scene less than two minutes after the initiation of the stop.

Officer Walker testified that after making contact with the defendant, he requested dispatch to check for outstanding warrants against the defendant in the local and surrounding parishes. While waiting for the results of the warrant check,

---

[1] At the time of his testimony at the hearing on the motion to suppress, Officer Walker was employed by the Pollock Police Department.

Officer Walker allegedly informed the defendant of the reason for the stop and, per the defendant's request, showed him the broken lights. Dispatch subsequently informed Officer Walker that the defendant had no outstanding warrants. Officer Walker further testified that Corporal McClung arrived at the scene before he began to write a citation to the defendant. Corporal McClung explained that upon arriving at the scene, he saw the defendant's name on his driver's license and recalled that, prior to the night of the stop, narcotics detectives with the Grant Parish Sheriff's Office advised him of having acquired "intel" that the defendant was possibly trafficking methamphetamine in a green Chevrolet pickup truck in the Dyson Creek area.

Officer Walker stated that while speaking with the defendant, he noticed that the defendant appeared "real jiggery [sic] and nervous," that the defendant "would not make eye contact" with him, and that the defendant was "sweating profusely[,]" such that sweat was "pouring off of his mouth, head[,] and face, [and] his shirt was soaking wet." Corporal McClung also stated that the defendant's "shirt was wet, visibly wet. He did have perspiration on his forehead and around his cheek area." When asked on direct examination if the defendant was exhibiting signs "typical or consistent" with what he had seen in the past of "persons who were under the influence of . . . narcotics," Office Walker responded, "Yes, sir, definitely." Officer Walker's testimony indicates that he then asked the defendant "if he had anything illegal in the truck . . . as far as any kind of drugs or weapons" and that the defendant replied that he did not. Officer Walker then asked the defendant for his consent to search the vehicle, which the defendant refused.

Officer Walker further testified that the defendant "kept wanting to put his hands in his pockets" and that he "told him on two (2) or three (3) occasions to

2

take his hands out of his pocket." Corporal McClung described the same behavior, explaining that after he arrived on the scene, he also asked the defendant to remove his hands from his pockets and told him to keep them out. Shortly thereafter, according to the officers, the defendant again placed his hands back into his pockets, at which time Officer Walker placed the defendant in handcuffs, advised him of his *Miranda* rights, and informed him "he was just being detained at that time and not arrested." Officer Walker testified that "based on his actions," he placed the defendant in handcuffs for "[o]fficer safety." Corporal McClung explained that the defendant was detained for "his lack of . . . following verbal commands" and "putting his hands in his pockets."

Corporal McClung testified that after the defendant was placed in handcuffs, he deployed his dog, which gave a positive alert to the passenger's side of the defendant's vehicle. Officer Walker then searched the defendant's vehicle, finding four plastic baggies containing methamphetamine, two loaded .45 caliber handguns, two unused glass pipes, three used glass pipes, digital scales, unused baggies, a blue straw with white residue inside of it, and a few cotton swabs with white residue on them.

On November 19, 2015, the State filed a bill of information charging the defendant with one count of possession with intent to distribute a Schedule II controlled dangerous substance (methamphetamine), in violation of La.R.S. 40:967(A)(1), and one count of illegal carrying of weapons while in possession of a controlled dangerous substance, in violation of La.R.S. 14:95(E). The defendant filed a Motion to Suppress Evidence on February 18, 2016, arguing that the search of the defendant's vehicle was "not based on any probable cause . . . nor [was] it based on any exceptions to the warrant requirements . . . and [was] therefore an

3

unreasonable and invalid search." A hearing on the motion was held the following day, at which the two officers testified. The trial court denied the motion at the conclusion of the hearing, finding no "violation that would warrant a suppression."

On February 22, 2016, the defendant entered a *Crosby* plea to the possession with intent to distribute charge, reserving his right to appeal the trial court's denial of the motion to suppress. *See Crosby*, 338 So.2d 584. The weapons charge was dismissed pursuant to the defendant's guilty plea. The defendant received a sentence of ten years at hard labor to run concurrently with a ten-year sentence he received by pleading guilty to a charge of possession of a firearm by a convicted felon, in violation of La.R.S. 14:95.1, from trial court docket number 16-180.[2]

The defendant appeals, assigning as error that:

I. THE TRIAL COURT ERRED IN DENYING THE MOTION TO SUPPRESS.

## Discussion

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. On review, we find no errors patent.

*Denial of Motion to Suppress*

In his sole assignment of error, the defendant challenges the denial of his motion to suppress. The defendant contends that "Officer Walker improperly elevated the investigatory stop in this case to an arrest by putting [the defendant] in handcuffs, having him lean against the patrol car, and advising him of his Miranda rights." The defendant argues both that "the warrantless search occurred after an invalid arrest, prior to deployment of a drug sniffing dog[,]" and that "[t]here were

---

[2] In its brief, defense counsel notes that the conviction and sentence for the defendant's felon in possession of a firearm charge "are not subject of this appeal [sic]."

no exigent circumstances requiring the warrantless search once [the defendant] was out of the truck in handcuffs." Thus, the contraband seized from his truck "should have been suppressed as 'fruit of the poisonous tree.' *Wong Sun v. United States*, 371 U.S. 471 (1963)."

A trial court's ruling on a motion to suppress "must be afforded great weight and will not be set aside unless there is an abuse of discretion." *State v. Thompson*, 11-915, pp. 13-14 (La. 5/8/12), 93 So.3d 553, 563. In *Thompson*, the supreme court explained this standard of review as follows:

> The analysis may be further broken down into the component parts of the trial court decision. "When a trial court makes findings of fact based on the weight of the testimony and the credibility of the witnesses, a reviewing court owes those findings great deference, and may not overturn those findings unless there is no evidence to support those findings." [*State v.*] *Wells*, 2008-2262, p. 4 [(La.7/6/10)]; 45 So.3d [577,] 580; *State v. Hunt*, 2009-1589, p. 6 (La.12/1/09); 25 So.3d 746, 751. Legal findings or conclusions of the trial court are reviewed *de novo*. *Id.; State ex rel. Thibodeaux v. State*, 2001-2510, p. 1 (La.3/8/02); 811 So.2d 875.

*Id.*

Regarding its conclusion that the search was valid, the trial court stated the following in its ruling at the hearing on the motion to suppress:

> There is no testimony that indicates that this stop was delayed beyond what was necessary to check warrants, which the officers are entitled to do[.] . . . During that window of time, which the officer were [sic] permitted to be doing those things, the dog detected, then you have got probable cause.
>
> . . . .
>
> [W]hen the dog detected, based upon the nervousness, sweating, there is probable cause. With the vehicle parked on the side of the road[,] I think it falls within the exigent circumstances as defined by the United States Supreme Court.
>
> I will be honest, Mr. Wilson. The only problem I saw with the stop or the only . . . thing that concerned me about the stop was placing [the defendant] in handcuffs and reading him his rights[,] but I

5

do not know if that necessarily led to a constitutional violation that led to the discovery of evidence. It was the dog and the search that led to the discovery of evidence.

Upon reviewing the record and the relevant jurisprudence, we find no abuse of discretion in the trial court's ruling.

We first consider whether Officer Walker had "reasonable cause to stop the defendant's vehicle." *State v. Washington*, 96-656, p. 7 (La.App. 3 Cir. 1/15/97), 687 So.2d 575, 579. According to La.Code Crim.P. art. 215.1(A), "[a] law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions." Moreover, "[a]n individual cannot be stopped in his automobile by a police officer, without a warrant, unless the officer had a reasonable suspicion that the individual has committed, or is about to commit, a criminal offense, including the violation of a traffic regulation." *State v. Fisher*, 94-603, p. 5 (La.App. 3 Cir. 11/2/94), 649 So.2d 604, 607, *writ denied*, 94-2930 (La. 4/7/95), 652 So.2d 1344. Given that the evidence is not contradicted that the defendant's taillight and license plate light were broken on the night of the stop, in violation of La.R.S. 32:304(A) and La.R.S. 32:304(C), we find that the record supports the ruling that Officer Walker had reasonable cause to make the stop.

Neither do we find indication in the record that the defendant was detained "for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity." La.Code Crim.P. art. 215.1(D). In *Washington*, 687 So.2d 575, officers performed a warrantless search of the defendant's vehicle after a dog alerted to the presence of drugs in the

6

vehicle. In finding that the search was valid, a panel of this court stated that "the canine unit arrived on the scene immediately as it was acting as backup for [the patrolling officer], and thus, there was no lengthy detention of the defendant while waiting for a canine unit to arrive." *Id.* at 580. As in *Washington*, the K-9 officer in the instant case quickly arrived on the scene as backup. Notably, according to Officer Walker's testimony, he had not even begun to write a citation for the defendant's traffic violations prior to Corporal McClung's arrival. Accordingly, the defendant was not detained for an unreasonably lengthy period of time before the dog was deployed.

Further, while the defendant was placed in handcuffs and advised of his *Miranda* rights, the circumstances of this case indicate that the detainment of the defendant for the officer's safety did not constitute an arrest. In *State v. Duhe*, 12-2677 (La. 12/10/13), 130 So.3d 880, officers approached a parked vehicle on suspicion that the inhabitants were engaged in methamphetamine trafficking, ordered the inhabitants out of the vehicle, placed the defendant in handcuffs, and searched the vehicle, finding contraband. The first circuit initially found that the officers "lacked probable cause to arrest [the] defendant[,]" and "[t]hus, the search of the vehicle could not be rationalized as incident to a lawful arrest[.]" *Id.* at 884-85. However, in reversing that ruling, the supreme court explained that "given the particular association of methamphetamine production and guns," the officer's "decision to handcuff [the] defendant for the duration of the stop was justified for officer safety and did not convert the encounter from a *Terry* stop to an arrest" and that the search of the vehicle was justified as "a protective search of the vehicle." *Id.* at 886-87.

Furthermore, in *State v. Lewis*, 12-902 (La.App. 5 Cir. 6/27/13), 121 So.3d 128, *writ denied*, 13-1926 (La. 4/17/14), 138 So.3d 618, the officers handcuffed the defendant citing officer safety, as the stop occurred at nighttime in a "high crime area[,]" the defendant was "dressed in a suspicious manner," and, like the defendant in the instant case, "he was putting his hands in his pocket." *Id.* at 136. Also similar to the instant case, the officers also "told [the] defendant that he was not under arrest, but was being detained for questioning." *Id.* Regarding whether this constituted an arrest, the fifth circuit stated the following:

> Inherent in the right of police to conduct a brief investigatory detention is also the right to use reasonable force to effectuate the detention. *State v. Morton*, 08-164, p. 7 (La.App. 5 Cir. 7/29/08), 993 So.2d 651, 657. There is no question that the use of handcuffs incrementally increases the degree of force that is used in detaining an individual. *Morton*, 08-164 at 7-8, 993 So.2d at 657. However, arrest-like features such as the use of drawn weapons and handcuffs may, but do not invariably, render the seizure a de facto arrest. *Id.*

> Therefore, when the State seeks to prove that an investigatory detention involving the use of handcuffs did not exceed the limits of a *Terry* stop, the State must show some specific fact or circumstance that could have supported a reasonable belief that the use of restraints was necessary to carry out the legitimate purpose of the stop without exposing law enforcement officers, the public, or the suspect himself to an undue risk of harm. *Morton*, 08-164 at 8, 993 So.2d at 657. Since police officers should not be required to take unnecessary risks in performing their duties, they are authorized to take such steps as are reasonably necessary to protect their safety and to maintain the status quo during the course of a *Terry* stop. *Id.* "[A]n officer's handcuffing a suspect is a reasonable method of ensuring officer safety." *State v. Jones*, 11-8, p. 11 (La.App. 5 Cir. 11/15/11), 78 So.3d 274, 282, *writ denied*, 11-2781 (La.4/13/12), 85 So.3d 1246.

> In the instant case, it does not appear that the officers had the intent to impose an extended restraint on defendant's liberty, since they told defendant that he was not under arrest, but was being detained for questioning. Additionally, the stop occurred in a high crime area at approximately 7:45 p.m. Defendant was dressed in a suspicious manner, which included a "full face mask," and he was putting his hands in his pocket. Corporal Amadeo testified that he did not know if defendant was armed, and Sergeant Roy Jacob testified at trial that defendant was a "pretty big fellow." At some point, the

8

officers noticed the large bulge in defendant's front pants pocket. In light of the circumstances, we find that the officers were justified in handcuffing defendant as a safety precaution, and that those actions did not rise to the level of an arrest.

*Id.* (footnote omitted).

Similarly, in this case, the trial court was made aware of various factors supporting its findings as to both the reasonableness of the stop and the reasonableness of the scope of that stop. Notably, the stop occurred at a late hour, and, according to the officers' testimony, the defendant failed to keep his hands out of his pockets as instructed. Corporal McClung had prior knowledge that the defendant may be trafficking methamphetamine, an activity which, as discussed above, is associated with the possession of firearms. Additionally, according to Officer Walker's testimony, the defendant's behavior was consistent with that of an individual under the influence of narcotics. Thus, the officers were justified in handcuffing the defendant for their safety, such that handcuffing him did not convert the stop into an arrest.

Additionally, we find no merit in the defendant's suggestion that the officer's advising him of his *Miranda* rights elevated the stop into an arrest. In *Thompson*, 93 So.3d at 570, the supreme court stated as follows:

> We do not find that the nature of the investigatory stop was turned into an arrest when [the officer] read the detained men their constitutional rights. [The officer] testified the standard operating procedure was to *Mirandize* all persons detained or arrested. We find this procedure comports with La. Const. art. 1, § 13. In addition, we cannot fault the officer for providing Thompson with greater protection than he might otherwise have had in an investigatory stop.

Moreover, in another *State v. Lewis*, 15-773 (La.App. 4 Cir. 2/3/16), 187 So.3d 24, after the defendant placed his hands in his pockets after repeatedly being asked not to do so, the officer handcuffed him, advised him of his *Miranda* rights,

9

and informed him that he was under a narcotics investigation. Relying on *Thompson*, the fourth circuit held that informing the defendant of his rights did not convert the stop into an arrest, stating the following:

> Here, [the officer] testified that he handcuffed Mr. Lewis only after he repeatedly tried to put his hand into his coin pocket, despite the detective's orders not to do so, and after the detective noticed a piece of sandwich bag sticking out of the top of that pocket. Given these circumstances, [the officer] was justified in handcuffing Mr. Lewis at that point. In addition, as in *Thompson*, [the officer's] advising Mr. Lewis of his *Miranda* rights and that he was under investigation for a possible drug violation did not elevate the stop to an arrest.

*Id.* at 33. We find the facts in *Lewis* similar to those of the instant case as, in both cases, the defendants repeatedly reached into their pockets during an investigative stop. We note too that in this case, the officers' testimony indicates that the defendant had the benefit of being informed that he was not being arrested, but merely detained.

Accordingly, we find no merit in the contention that the officers converted the stop into an unlawful arrest either by handcuffing the defendant or by reading the defendant his *Miranda* rights. Thus, the ensuing search was not performed incident to an unlawful arrest.

Additionally, the trial court further observed that once the dog alerted, the officers had probable cause to search the vehicle. It is well-settled that deploying a drug dog is not a "search" within the meaning of the Fourth Amendment, but a positive alert from a drug-sniffing dog provides probable cause to perform a warrantless search. *See United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637 (1983); *see also State v. Lopez*, 00-562 (La. 10/30/00), 772 So.2d 90. Additionally, "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle

10

without more." *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 2487 (1996). *See also State v. Johnlouis*, 09-235 (La.App. 3 Cir. 11/4/09), 22 So.3d 1150, *writ denied*, 10-97 (La. 6/25/10), 38 So.3d 336, *cert. denied*, 10-7291, 562 U.S. 1150, 131 S.Ct. 932 (2011) (wherein a panel of this court declined to determine that a handcuffed defendant was under arrest, finding instead that a warrantless search of his vehicle was permissible under the automobile exception).

Similarly, in this case, we find that the record supports the trial court's decision that the search of the defendant's vehicle was performed pursuant to the automobile exception to warrantless searches. The above jurisprudence indicates that the officers had probable cause to search the vehicle after the dog alerted to the presence of narcotics within the vehicle, and the defendant's vehicle was readily mobile.

For these reasons, we find no abuse of discretion in the trial court's denial of the motion to suppress. The defendant's sole assignment of error lacks merit.

## DECREE

For the foregoing reasons, the conviction of the defendant, James J. Flournoy, is affirmed.

**AFFIRMED.**

11